## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN AT FLINT

In re:                          )

John Lavene Ward          )    Case No. 22-31309-jda

Saundra Jean Ward         )    Hon.: Joel D. Applebaum

                          )    Chapter 7

                          )

       Debtors.           )

                          )

_____

ALLISON RABER and IAN RABER   )

                          )

        Plaintiff,        )    Adversary No. _____

                          )

v.                           )    Hon.: _____

                          )

JOHN LAVENE WARD and

SAUNDRA JEAN WARD       )

                          )

       Defendants.      )

_____ )

## <u>COMPLAINT TO DETERMINE DISCHARGEABILITY OF INDEBTEDNESS</u>

NOW COMES Plaintiffs, ALLISON RABER and IAN RABER, by and through its attorneys, The Mike Morse Law Firm and for its Complaint against Defendants, JOHN LAVENE WARD and SAUNDRA JEAN WARD, states:

### <u>Jurisdiction and Parties</u>

1.    This is an adversary proceeding brought pursuant to Sections 523 of Title 11 of the United States Code and Fed. R. Bankr. P. 7001 to determine dischargeability of indebtedness.

2.    This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I), over which this court has jurisdiction pursuant to 28 U.S.C. §1334.

1

3.      Plaintiff ALLISON RABER is a resident of the City of Novi, County of Oakland, State of Michigan.

4.      Plaintiff IAN RABER is a resident of the City of Novi, County of Oakland, State of Michigan.

5.      Defendant JOHN LAVENE WARD is a resident of the City of Fenton, State of Michigan, who at all times relevant conducted business in the County of Oakland, State of Michigan.

6.      Defendant SAUNDRA JEAN WARD is a resident of the City of Fenton, State of Michigan, who at all times relevant conducted business in the County of Oakland, State of Michigan

7.      JOHN LAVENE WARD and SAUNDRA JEAN WARD (collectively "Defendants") are insiders of one another pursuant to 11 U.S.C. §101(31).

8.      Defendants are contractors who provides remodeling and renovation services for residential properties.

9.      On February 21, 2022, Plaintiffs, Allison Raber and Ian Raber, [hereinafter "Plaintiffs"] entered into a written agreement for construction with All in One Custom Renovations, LLC d/b/a All in One Kitchen and Bath f/k/a Ward Stone Group, LLC. [hereinafter "All in One"] **(See Exhibit A)**

10.     A copy of the February 21, 2022 contract is in the possession of Defendants.

11.     All in One is a mere instrumentality of Defendant John Ward.

12.     All in One is a mere instrumentality of Defendant Saundra Ward.


## Facts

13.     Under the terms of the February 21, 2022 contract, Plaintiffs paid to Defendants Twenty-Nine Thousand, Three Hundred Twenty-Nine Dollars and two cents ($29,329.02).

2

14.     Plaintiffs have fulfilled all duties due under the contract.

15.     Defendants have not performed their duties under the contract.

16.     Defendants have breached the contract and has confirmed an intent to neither perform their obligations under the contract, nor cure his breach.

17.     The contract providers that in the event of a legal dispute, the prevailing parties will be entitled to all costs and reasonable attorney's fees.

18.     Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

19.     On or about August 1, 2022, Plaintiffs commenced an action against Defendant JOHN WARD, in the Oakland County Circuit Court, Case No. 22-195360-CK, alleging violations of The Michigan Building Contract Fund Act - M.C.L. §570.151 *et seq.*, fraudulent misrepresentation, and violation of M.C.L. §600.2919a, among other things (hereinafter the "State Court Case"). (See **Exhibit B)**.

20.     On or about September 6, 2022, Plaintiffs Amended their Complaint in the State Court Case to include allegations of Intention / Reckless Infliction of Emotional Distress against Defendant JOHN WARD and adding SAUNDRA WARD as a Defendant, alleging violations of The Michigan Building Contract Fund Act - M.C.L. §570.151 *et seq.*, fraudulent misrepresentation, violation of M.C.L. §600.2919a, and Intention / Reckless Infliction of Emotional Distress, among other things. (**See Exhibit C**)

21.     On September 1, 2022, Defendants filing of a voluntary petition under Chapter 7 of Title 11 of the United States.

3

## COUNT I
## <u>BREACH OF M.C.L. §570.151 – THE BUILDING CONTRACT FUND ACT</u>

22.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

23.     Defendants are engaged in the building construction business.

24.     The funds received by Defendants from Plaintiffs constitute a trust fund for the benefit of Plaintiffs for the purpose to first pay laborers, subcontractors and materialmen, engaged by Defendants to perform labor or furnish material for the specific improvement under the contract with Plaintiffs.

25.     Defendants owe Plaintiffs fiduciary duties to properly handle the trust funds and to first pay laborers, subcontractors and materialmen, engaged by Defendants to perform labor or furnish material for the specific improvement under the contract with Plaintiffs.

26.     Defendants used funds paid by Plaintiffs for a purpose other than to first pay laborers, subcontractors and materialmen, engaged by it to perform labor or furnish material for the specific improvement under the contract with Plaintiffs.

27.     Defendants' use of the trust funds a purpose other than to first pay laborers, subcontractors and materialmen, engaged by it to perform labor or furnish material for the specific improvement under the contract with Plaintiffs constitutes a breach of the Michigan Building Contract Fund Act, MCL §§570.151 *et seq.* (also known as the Michigan Builder's Trust Fund Act, the "MBTFA").

28.     Defendants' use of funds paid by Plaintiffs for a purpose other than to perform labor or furnish material for the specific improvement under the contract with Plaintiffs, was done so with the intent to defraud Plaintiffs.

4

29.     Under the MBTFA, Defendants are trustees of the funds in Trust for Plaintiffs, as persons in control of the funds paid by Plaintiffs.

30.     Defendants, as individuals in control of the monies of Plaintiffs, have violated the MBTFA.

31.     Defendants' use of funds paid by Plaintiffs is violative of MCL 570.152, a felony, punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment.

32.     Defendants' violation of MCL 570.152 gives rise to civil remedy for damages sustained.

33.     Defendants, as individuals in control of funds in Trust, obtained property from Plaintiffs under false pretenses and/or based on false representations concerning Defendants' and All in One's financial condition.

34.     Defendants, as individuals in control funds in Trust obtained, have violated the MBTFA by defalcating trust funds while acting in a fiduciary capacity.

35.     Despite demands and commencing of the State Court Case, Defendants have failed to return any funds held in Trust to Plaintiffs.

36.     In violation of the MBTFA, and in breach of their fiduciary duties under the MBTFA, Defendants intentionally, consciously, and recklessly misappropriated, defalcated, and diverted building contract funds in their possession and control to the detriment of Plaintiffs.

37.     Defendants' violations of the MBTFA have damaged Plaintiffs.

38.     Defendants' debt to Plaintiffs is non-dischargeable pursuant to 11 U.C.C. §§ 523(a)(2)(A) and (a)(4).

WHEREFORE, Plaintiffs, ALLISON RABER and IAN RABER, respectfully requests that

5

the Court enter judgment in favor of Plaintiff determining that the debt owed by Defendants JOHN LAVENE WARD and SAUNDRA JEAN WARD pursuant to MBTFA is not dischargeable pursuant to 11 U.S.C. §§523(a)(2) and (a)(4), and award ALLISON RABER and IAN RABER a judgment against Defendants JOHN LAVENE WARD and SAUNDRA JEAN WARD in an amount of no less than Twenty-Nine Thousand, Three Hundred Twenty-Nine Dollars and two cents ($29,329.02). In the alternative, Plaintiffs, ALLISON RABER and IAN RABER, respectfully requests that the Court enter judgment in favor of Plaintiff determining that the debt alleged to be owed by Defendants JOHN LAVENE WARD and SAUNDRA JEAN WARD pursuant to MBTFA is not dischargeable pursuant to 11 U.S.C. §§523(a)(2) and (a)(4), and allow ALLISON RABER and IAN RABER to proceed against Defendants JOHN LAVENE WARD and SAUNDRA JEAN WARD in the Oakland County Circuit Court.

## COUNT II
## EMBEZZLEMENT/CONVERSION/VIOLATION OF M.C.L. §600.2919a

39.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

40.     Pursuant to the MBTFA, all payments received by Defendants from Plaintiffs are deemed to be, and constitute, trust funds, for the benefit of Plaintiffs, and shall be used to first pay laborers, subcontractors and materialmen, engaged by Defendants to perform labor or furnish material for the specific improvement under the contract with Plaintiffs.

41.     Defendants, as fiduciaries, and as the person in control of building contracts and funds on behalf of Plaintiffs, has received payment from Plaintiffs, but defalcated trust funds and did not pay all or part of the money received for the benefit of Plaintiffs.

42.     As the direct and proximate result of Defendants' conversion/embezzlement, Plaintiffs has been damaged in an amount of no less than Twenty-Nine Thousand, Three Hundred Twenty-Nine Dollars and two cents ($29,329.02), plus the costs and attorney's fees to bring the State Court Case, as well as this case.

43.     The Defendants are liable to Plaintiffs for embezzlement and conversion pursuant to M.C.L. §600.2919a, by knowingly converting funds belonging to Plaintiffs for their own purpose.

44.     Violations of M.C.L. §600.2919a entitle Plaintiffs to three times the amount of its actual damages, plus costs and attorney fees.

45.     Defendants' debt to Plaintiffs pursuant to M.C.L. §600.2919a is non-dischargeable pursuant to 11 U.C.C. §§ 523(a)(2)(A) and (a)(4).

WHEREFORE, Plaintiffs, ALLISON RABER and IAN RABER, respectfully requests that the Court enter judgment in favor of Plaintiff determining that the debt owed by Defendants JOHN LAVENE WARD and SAUNDRA JEAN WARD for embezzlement and conversion pursuant to M.C.L. §600.2919a is not dischargeable pursuant to 11 U.S.C. §§523(a)(2) and (a)(4), and award ALLISON RABER and IAN RABER a judgment against Defendants JOHN LAVENE WARD and SAUNDRA JEAN WARD in an amount in an amount of three times the amount owed, in addition to the amount owed, plus Plaintiffs' actual attorney's fees and costs. In the alternative, Plaintiffs, ALLISON RABER and IAN RABER, respectfully requests that the Court enter judgment in favor of Plaintiff determining that the debt alleged to be owed by Defendants JOHN LAVENE WARD and SAUNDRA JEAN WARD pursuant to M.C.L. §600.2919a is not dischargeable pursuant to 11 U.S.C. §§523(a)(2) and (a)(4), and allow ALLISON RABER and IAN RABER to proceed against Defendants JOHN LAVENE WARD and SAUNDRA JEAN WARD in the Oakland County Circuit Court.

## COUNT III
## FRAUDULENT MISREPRESENTATION

46.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

47.     Defendants represented on multiple occasions to Plaintiffs that they would dutifully fulfill their obligations to them and would act in performance under the Contract.

48.     Defendants represented on multiple occasions to Plaintiffs that construction activities would commence in early October 2022.

49.     Defendants represented on multiple occasions to Plaintiffs that the cabinet manufacturer maintained a 20-22 week lead time from order to delivery.

50.     Plaintiffs' funds to be held in Trust by Defendants was in an amount in excess of the amount necessary to pay for all materials to complete construction under the contract.

51.     Defendants failed to order the necessary cabinets from the manufacturer prior to May 1, 2022 to meet the manufacturer lead times for delivery to commence construction in early October 2022 as represented.

52.     On June 13, 2022, in spite of never having ordered all necessary materials, Defendants made additional representations that performance was on track to be timely performed in early October 2022.

53.     Defendants' representation(s) were false in that they failed to purchase materials, failed to begin any construction activities and retained all funds paid without performing their obligations.

54.     Defendants' representation(s) were false in that they knew that they he had no intention and/or ability to perform under the contract and/or recklessly disregarded their lack of ability to perform under the contract.

8

55. Defendants made their representation(s) with the intent of Plaintiffs relying on their representation(s).

56. Plaintiffs did rely on Defendants' representation(s).

57. As a result of Defendants' fraudulent misrepresentations, Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

58. Defendants' debt to Plaintiffs due to fraudulent misrepresentation is non-dischargeable pursuant to 11 U.C.C. §§ 523(a)(2)(A) and (a)(4).

WHEREFORE, Plaintiffs, ALLISON RABER and IAN RABER, respectfully requests that the Court enter judgment in favor of Plaintiff determining that the debt owed by Defendants JOHN LAVENE WARD and SAUNDRA JEAN WARD due to fraudulent misrepresentations is not dischargeable pursuant to 11 U.S.C. §§523(a)(2) and (a)(4), and award ALLISON RABER and IAN RABER a judgment against Defendants JOHN LAVENE WARD and SAUNDRA JEAN WARD in an amount of no less than Twenty-Nine Thousand, Three Hundred Twenty-Nine Dollars and two cents ($29,329.02), together with interest, costs and reasonable attorney fees so wrongfully sustained. In the alternative, Plaintiffs, ALLISON RABER and IAN RABER, respectfully requests that the Court enter judgment in favor of Plaintiff determining that the debt alleged to be owed by Defendants JOHN LAVENE WARD and SAUNDRA JEAN WARD due to fraudulent misrepresentation is not dischargeable pursuant to 11 U.S.C. §§523(a)(2) and (a)(4), and allow ALLISON RABER and IAN RABER to proceed against Defendants JOHN LAVENE WARD and SAUNDRA JEAN WARD in the Oakland County Circuit Court.

## COUNT IV
## INTENTIONAL / RECKLESS INFLICTION OF EMOTIONAL DISTRESS

59.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

60.     Defendants continuously affirmed to Plaintiffs that they were ready, willing, and able to perform on the contract.

61.     Defendants continuously affirmed to Plaintiffs that performance was on track, including ordering materials with sufficient lead times for delivery to perform construction on the schedule(s) provided

62.     Defendants, while making continuous affirmations to Plaintiffs, had actually embezzled Plaintiffs' funds and violated statutory Trust responsibilities.

63.     When Defendants confirmed in writing that they would not perform under the contract in a letter dated two weeks after they had confirmed that performance was on track, closed the business establishment that they used as a mere instrumentality, shut down their business website, closed their business and personal Facebook and LinkedIn accounts, stopped answering their phones, and provided no means to contact.

64.     Defendants' actions were extreme and outrageous.

65.     Defendants' actions were performed with intent or recklessness.

66.     Defendants' actions caused reasonably foreseeable severe emotional distress to Plaintiffs, including but not limited to severe and excruciating pain and suffering, humiliation and embarrassment and loss of natural enjoyments of life which will continue to be experienced for an indefinite time into the future.

67.     Upon information and belief, the damages sustained by Plaintiffs as a result of the tortious acts of Defendants are covered by a policy of liability insurance maintained by Defendants.

68.    Defendants' debt to Plaintiffs due to fraudulent misrepresentation is non-dischargeable pursuant to 11 U.C.C. §§ 523(a)(6).

WHEREFORE, Plaintiffs, ALLISON RABER and IAN RABER, respectfully requests that the Court enter judgment in favor of Plaintiff determining that the Tort debt owed by Defendants JOHN LAVENE WARD and SAUNDRA JEAN WARD is not dischargeable pursuant to 11 U.S.C. §§523(a)(2) and (a)(4), and award ALLISON RABER and IAN RABER a judgment against Defendants JOHN LAVENE WARD and SAUNDRA JEAN WARD in an amount they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiffs, together with interest, costs and reasonable attorney fees so wrongfully sustained. In the alternative, Plaintiffs request that the Court enter an Order lifting the stay pursuant to 11 U.S. Code § 362 as to Oakland County Circuit Court Case number: 22-195360-CK, as to the Tort claims, in its entirety or at least to the extent of liability limits covered by the policy of insurance.

Respectfully submitted,
MIKE MORSE LAW FIRM,
Attorneys for Plaintiffs

/s/ Robert Silverman

_____
Robert S. Silverman P-53626
24901 Northwestern Highway, Suite 700
Southfield, MI 48075
(248) 350-9050

Dated:  October 4, 2022

# Exhibit A



## Owner Invoice

**Job Information**

Allison & Ian Raber
30936 Tanglewood Dr., Novi, MI 48377

| Invoice Title: KITCHEN REMODEL DEPOSIT |
| --- |
| Invoice ID: 0001 |

| | | |
| --- | --- | --- |
| **Invoice Amount:** | $29,329.02 | **Paid** |
| **Amount Paid:** | $29,329.02 | **Last Payment Date:** Feb 21, 2022 |

| Payment Details | | | |
| --- | --- | --- | --- |
| **Date** | **Payment Method** | **Status** | **Amount** |
| Feb 21, 2022 | Check | Paid | $29,329.02 |
| | | **Total Paid:** | **$29,329.02** |

| Description of Invoice |
| --- |
| Paid 2/21/22 Check #1061 |
| **SEE PAYMENT CONTRACT FOR REMAINING BALANCE/PAYMENTS DUE** |
| |
| Thank you for choosing All in One Kitchen & Bath! |

**Deadline Date:**
**Balance Due:** $0.00



**all in one**
K I T C H E N   &   B A T H

4286 E Grand River Ave • Howell, MI 48843 • Phone: 517-552-5985 • Fax: 517-513-6522

Allison & Ian Raber
248-909-9945

30936 Tanglewood Dr.
Novi, MI 48377

**Print-date:** | 2-21-2022

## Proposal Breakdown

| Title | Description | Price |
|---|---|---|
| CREDIT | Design Retainer Fee Credit | $-300.00 |
| DEMO LABOR | Includes removal and disposal of the following materials; a dumpster will be on site for approximately 3-5 days. | $2,055.20 |
| | *Disconnect sink/faucet/disposal *keeping disposal*- temp cap lines *Disconnect and move appliances as needed for install - KEEPING ALL EXISTING APPLIANCES - dishwasher, stove, microwave, fridge *32 SF of laminate countertops *28.25 LF of cabinetry **RETAIN THE UPPER CABINET TO THE LEFT OF THE SINK** SET ASIDE FOR CUSTOMER *Window apron @ sink window *1 GFI cover, 4 outlet covers, 2 double switch covers only - customer to do all electric work post demo *AIOKB to mark where customer is to install new outlets *Bury telephone line in its current location - put on a nail in the wall *30 SF of drywall at areas of tile backsplash only / where telephone line is being buried<br><br>NOTES: Flooring is not included in this line item - see separate flooring line item below | |
| INSTALL LABOR | Install of the following; any labor materials included will be indicated by "provide"; includes materials and labor for installing and removing protective materials as needed<br><br>DRYWALL/FRAMING *Provide & install 30SF of drywall at areas of tile backsplash / where telephone line is being buried only; tape, mud, sand *Provide & install 2x4 clete wall end on right of DW *Provide & install 17.5 LF of base cabinet build up (note: floating floors are 7mm)<br><br>PLUMBING / APPLIANCES *Move dishwasher from left of sink to right *see customer responsibility below* *Provide & install temp sink/faucet, partial ply countertop *Reconnect/reinstall customer's appliances - dishwasher, stove, microwave, fridge *Trip to disconnect temp sink/faucet, partial ply countertop prior to counter install | $12,132.70 |

*Plumbing reconnect post countertop install - sink/faucet/re-install customer supplied disposal

CABINETRY
*3 fillers
*32.5 LF cabinetry
*21 LF scribe @ cabinet top to ceiling
*20 LF light rail moulding (including on over the fridge cabinet if room)
*16 LF toe kick cover
*4 loose panels on peninsula back/side, spaced evenly
*7 LF base moulding on peninsula back & side only - 45 at front toe kick
*16.25 LF shoe moulding on all base cabinets
*19 LF scribe on cabinet ends @ drywall
*29 pieces of cabinet hardware
*Cut out for peninsula outlet

TILE
*27.25 SF of tile backsplash; standard subway tile in a 50/50 brick style pattern; provide & install thinset, grout, caulk and 3/8" brushed nickel L Channel
GROUT COLOR: ALABASTER

UNDER CABINET LIGHTING
*AIOKB to cut/modify cabinets for 2 plugs (customer to run lines and supply outlets/covers in 2 locations on each side of the kitchen)
*AIOKB to provide & install 2 zones of under cabinet 3000K soft white LED strip lighting controlled by wall mounted dimmable controllers

NOTES: No prime/paint included with the exception of any areas of drywall work included.
Light fixtures not included.
Flooring is not included in this line item - see separate flooring line item below

CUSTOMER TO COMPLETE ALL ELECTRIC LINE MOVING/RUNNING POST AIOKB DEMO.
AIOKB installer to indicate preference of rough electric.

CUSTOMER IS RESPONSIBLE FOR THE FOLLOWING:
*Move dishwasher electric to right of sink
*Move outlet on right of fridge right approx.5"
*Add 1 outlet on the left of the sink wall
*Add 1 outlet for peninsula end
*Provide & install outlet/switch covers
*Run 2 lines&supply outlets/covers in 2 locations-each side of kitchen for electric source for UCL

| KITCHEN CABINETRY | WELLBORN CABINET | $17,401.54 |
| | Series: Select Series | |

Series: Select Series
Door Style: Camden Square MDF
Door Construction Type: Full Overlay
Hinge Type: Smooth Close Hinge
Drawer Front Style Option: Classic Drawer Front Option - Camden
Wood Drawer Soft Close Upgrade
Wood Species: Medium Density Fiberboard
Finish: Glacier
All Plywood Construction Option: No
Plywood Cabinet End Option: No

Cabinet lead time is an estimated 20-22 weeks from order submission (subject to change without notice).

Cabinet delivery is included, delivery will be to customer's driveway or garage only. Someone over the age of 18 must be present for delivery and to assist with unloading the cabinetry - must also sign for and accept the delivery. All In One Kitchen and Bath will have

representative available at time of delivery.

Customer is responsible to adhere to the Wellborn guides for handling, installation and care.
https://wellborn.flippingbook.com/p/wellborn-installation-care-warranty-guide/

Layout, bill of materials will be provided at time of sale. Only the items listed on the bill of materials are included in the order. IF any additional materials are needed, there will be an additional charge and standard lead times apply to any additional orders.

| CABINET HARDWARE | 128 mm Center-to-Center Matte Black Callie Cabinet Pull | $469.54 |
| | 1 pull per door / drawer | |

Collection Callie
Finish Matte Black
Center to Center 128 mm
Overall Length 6-1/4"
Width 3/16"
Foot Length 13/16"
Foot Width 7/16"
Projection 1-1/4"
Clearance 13/16"
Material Zinc

Delivery is included to the Howell showroom. If AIOKB is completing installation, we will transport the materials to the customer's home.

NOTE: SOME MATERIALS ARE/MAY BE ON BACK ORDER / NOT AVAILABLE AT TIME OF ORDER - RE-SELECTIONS MAY BE NECESSARY.

| COUNTERTOPS | Kitchen Countertops - See layout attached for counters included in this pricing | $8,542.50 |

Cambria ~ Luxury Series ~ Marwell 3CM, polished
No Backsplash
Finished Edge: Treeline / Double Bevel
1 - Undermount Sink Cutout
1 - Faucet Hole
*See plumbing materials below for sink*

**CUSTOMER REQUESTS SLABSMITH REVIEW PRIOR TO APPROVAL OF FABRICATION**

Includes template, material, fabrication and installation of countertops.

Current lead times (subject to change without notice):
1-2 weeks out for template
4-6 weeks from template to install

IMPORTANT NOTES:
**SUPPORTS ARE NOT INCLUDED** If there are any overhangs that require additional supports/balance braces it will be determined at template. IF any are required there will be an additional charge to the customer.
*Placement of all seams is at the discretion of the fabricator. Seams are visible to the eye and touch. Every effort is made to ensure that the seam is placed in the best location for structural integrity and to make the tops aesthetically pleasing. Color coordinated epoxy will be used to fill the seam, and blend in with the countertop. Minor cracks in grout and caulking are unavoidable and are considered normal due to expansion and contraction of rigid materials. Please note: veined or patterned designs may not match at seam locations.
- Cambria Quartz, along with other quartz & granite, are natural products. Variations in the natural stone color, size, shape, veining, shade are unique and inherent characteristics to be expected with these products. This does not affect the product performance in any

manner.
- Color "blotches" are intended and purposely engineered into many designs to enhance the natural beauty. Please note that product and style samples are small select cuts from a larger slab which may not exhibit all the characteristics of a design and therefore may not be fully representative of the final product. Product will not be replaced due to these design variations.
- Cambria, and all stone products, are not seamless products and seams will be visible. The product pattern and shade can change at the seam.
- Due to variation of designs, in addition to samples, check the manufacturer's website to view a full size slab photo. Many manufacturers have changed colors over time and this will help ensure the sample you are viewing is current. AIOKB & fabricator will not be held responsible for pattern variation between sampling and final product installed.

---

| PLUMBING MATERIALS | SINK | $931.83 |

SINK
Half Divide Stainless Steel Kitchen Sink

Overall Dimensions: 32 1/2" x 18 1/8" x 8 1/4"
Undermount Installation
16- Gauge Steel Option
Certified High-Quality 304 Stainless Steel
Brushed Satin Finish
Center Drain
Thick Sound Dampener Rubber Pad
Fully Insulated
2 - bottom sink grids
1 - strainer basket
1 - Inskinerator disposal flange cover
1 - disposal baffle

FAUCET
Coranto™ Single Handle Pull Down Kitchen Faucet In Matte Black
Spout Height : 15-7/8
Overall Height : 15-7/8
Spout Height Deck : 8-1/4
Spout Length : 9-3/8
Max Deck Thickness : 2.5

*MagnaTite® Docking uses a powerful integrated magnet to snap your faucet spray wand precisely into place and hold it there so it stays docked when not in use and doesn't droop over time
*ShieldSpray® Technology
*DIAMOND™ Seal Technology
*InnoFlex® PEX supply lines
*Soft, rubber Touch-Clean® spray holes allow you to easily wipe away calcium and lime build-up with the touch of a finger
*The high-arc, gooseneck design swivels 360 degrees with a 20-in. retractable hose for added convenience during everyday kitchen tasks

Cleaning and Care
Care should be given to the cleaning of this product. Although its finish is extremely durable, it can be damaged by harsh abrasives or polish. To clean, simply wipe gently with a damp cloth and blot dry with a soft towel.

Delivery is included to the Howell showroom. If AIOKB is completing installation, we will transport the materials to the customer's home.

NOTE: SOME MATERIALS ARE/MAY BE ON BACK ORDER / NOT AVAILABLE AT TIME OF ORDER - RE-SELECTIONS MAY BE NECESSARY.

---

| TILE BACKSPLASH MATERIALS | Shadebrick Series | $822.48 |

Shadebrick Series
Light (Off White)
Glazed Wall Tile

Finish: Gloss
7.3cm x 30cm
(3" x 12")
Sold by the carton only

For coverage of 27.25 SF, including waste.

NOTE:
To be installed in a standard brick style, horizontal layout with metal trim on open ends.

Delivery is included to the Howell showroom. If AIOKB is completing installation, we will transport the materials to the customer's home.

NOTE: SOME MATERIALS ARE/MAY BE ON BACK ORDER / NOT AVAILABLE AT TIME OF ORDER - RE-SELECTIONS MAY BE NECESSARY.

| FLOORING DEMO & INSTALL - KITCHEN, DINING ROOM, LAUNDRY ROOM, FOYER | KITCHEN/DINING/FOYER/LAUNDRY | $5,384.89 |
| --- | --- | --- |

DEMO
*Move customer emptied furniture as needed
*Remove & dispose of 77 LF shoe moulding
*Remove & dispose of 71 LF base moulding
*Remove 2 floor vents KEEPING
*Remove & dispose of 316 SF hardwood floors
*Move washer and dryer as needed for demo
*Remove & dispose of 23 LF shoe moulding
*Remove & dispose of 23 LF base moulding
*Remove & dispose of 42 SF vinyl type flooring


INSTALL
*Move customer emptied furniture as needed
*Install 316 SF of roll out underlayment
*Install 316 SF of laminate flooring
*Reinstall 2 floor vents
*Install 68 LF of primed white base moulding (customer supplied)
*Install 74 LF of primed white shoe moulding (customer supplied)
*Move washer and dryer as needed for install
*Install 42 SF of roll out underlayment
*Install 42 SF of laminate flooring
*Install 23 LF of primed white base moulding (customer supplied)
*Install 23 LF of primed white shoe moulding (customer supplied)

NOTE: Subfloor replacement is NOT included - if needed in any areas it will be added via change order at time of installation.
Leveling is NOT included - if any areas need leveling it will be added via change order at time of installation.
Doors, door jamb and case mouldings are NOT included.
Customer is responsible for removing any decorative items from the rooms prior to floor install - including free standing benches, emptying cabinetry/furniture, etc.

****CUSTOMER TO PROVIDE ALL BASE AND SHOE MOULDING PAINTED*****

| FLOORING MATERIALS - KITCHEN/DINING/FOYER/LAUNDRY ONLY | INHAUS LAMINATE FLOORING | $1,441.02 |
| --- | --- | --- |

CASK OAK
Visions Collection
Color: Brown
Shade: Dark
Variation: Medium
Edge profile: 4-side bevel
Number of unique planks:10

Dimensions
Plank width: 7.64 in (194 mm)
Plank length: 50.63" (1,286 mm)
Thickness: 7 mm
SQ. FT / Carton: 24.17

KITCHEN/DINING/FOYER/LAUNDRY
Laminate flooring material, Omni Choice underlayment
For coverage of 316 SF, including waste
Transitions: 1 Reducer, 1 T Moulding, 2 Versa tracks

**Total Price:     $48,881.70**

This is a contract between named customer and All In One Kitchen & Bath (also/formerly known as AIOCR, All in One Custom Renovations, Ward Stone Group, WSG Kitchen and Bath), and may be referred to as "AIOKB" in the contract and terms and conditions. The following are listed as Terms and Conditions of the contract. **By signing the contract, customer understands and agrees to all following Terms and Conditions and items contained in the quote.**

**GENERAL TERMS AND CONDITIONS:**

1. By signing this contract, customer agrees to all listed terms and conditions. The items listed in the quote are hereby accepted. AIOKB and/or its affiliates are approved to complete the work as specified.

2. **ONLY WORK AND MATERIALS THAT ARE LISTED ON THE QUOTE ARE INCLUDED REGARDLESS OF VERBAL OR OTHERWISE INDICATED. IF ITEMS ARE ADDED AFTER THIS CONTRACT IS SIGNED, A CHANGE ORDER WILL BE REQUIRED. IF THE CHANGE ORDER RESULTS IN ADDITIONAL CHARGES, THE CUSTOMER IS RESPONSIBLE FOR ANY ADDITIONAL CHARGES.**

3. Customer agrees to make payment in full to AIOKB for all amounts due as listed in the contract and/or Payment Contract document.

4. **If the customer wants to pay by credit card there is a 3% processing fee that is added to the estimate at the time of sale. If the customer chooses to pay by paper or electronic check there is no additional fee. If paying by electronic check through Buildertrend there are two micro-deposits that will deposit into the customer's account that must be verified before the funds are transferred to AIOKB. Once this is done once at the beginning, there are no additional steps to take, other payments made by electronic check will automatically go through.**

5. If payments are not received per contract, customer agrees to pay all costs of collection, including reasonable attorney's fees, whether suit is filed or not, that are incurred by AIOKB. Any late and/or unpaid balances will be subject to a 2% late fee per day for every day past due. Payments are expected on the due dates prior to end of business. See payment contract and/or Countertop Terms and Conditions as listed below for due dates.

6. All quotes, proposals, contracts are valid for 30 days.

7. AIOKB reserves the right to make changes at any time.

8. All materials are subject to stock and availability at time of order. AIOKB is not responsible if materials are no longer available at time of order, customer will be responsible to make alternative selections as needed.

9. **ALL MATERIAL SALES ARE FINAL. NO RETURNS OR EXCHANGES ARE PERMITTED. There are no refunds or returns. There are no refunds or returns on unused products. FINAL SELECTIONS ARE FINAL.**

10. **ALL DEPOSITS ARE NON-REFUNDABLE.**

11. All change orders are paid in full at time of approval. Change orders will not be processed or ordered until paid in full. Change orders will increase lead times and job completion.

12. If customer has opted to NOT utilize AIOKB for in home measuring services, then the items/materials listed in this quote are gathered from customer and/or customer's contractor supplied measurements. AIOKB is NOT responsible for any lack of or excess of items/materials included in this quote. If additional items/materials are needed, it is the customer and/or customer's contractor responsibility to pay for the additional items/materials, including any additional shipping and/or delivery fees to AIOKB.

13. If customer is not utilizing AIOKB for installation of items/materials, customer is responsible to arrange pick up at a determined AIOKB location at a set date/time unless otherwise notated in the contract.

14. Samples are representations of materials which will almost always contain variation. Samples do NOT exhibit all characteristics and designs of materials and may not be fully representative of what will be installed. Customer understands that by purchasing from samples that final materials may vary.

15. It is customer's sole responsibility for the care and maintenance of products purchased. It is customer's responsibility to adhere to the recommendations for each product's care and maintenance. Natural products, tile and grout all require regular sealing which is solely the customer's responsibility post installation.

16. **ALL PROVIDED LEAD TIMES, START DATES, COMPLETION DATES, ETC. ARE ONLY ESTIMATES AND ARE SUBJECT TO CHANGE AT ANY TIME. DATES ARE BASED ON MULTIPLE FACTORS, SOME OF WHICH WE HAVE NO CONTROL OVER. AIOKB WILL UPDATE YOU OF ANY DELAYS AS SOON AS WE ARE MADE AWARE OF THEM.**

17. Any drawings and/or renderings presented to the customer are artistic interpretations of the general appearance of the design. Any decorative items depicted such as light fixtures, furniture, paint, etc. are not included in the quote unless otherwise specified.
18. Each time a modification to the original agreement is made, a Change Order is required.
19. It is always recommended that a single decision maker is determined prior to job start. If one homeowner/customer makes a selection or decision, they are making the selection or decision on behalf of all parties involved and/or concerned.
20. **PHOTOS/VIDEOS: AIOKB and/or its affiliates are authorized to take and use photos and/or videos of your property to be used for demonstration and marketing purposes. These photos may be used publicly on all outlets.**
21. If customer's property is in an association, it is solely the customer's responsibility to obtain association permission, pay fees, comply with any and all rules, guidelines, etc. as applicable for any work being completed by AIOKB.

## COUNTERTOP TERMS AND CONDITIONS:

1. See layout attached for countertop sizes that are included in the pricing shown on the contract.
2. For countertop only purchases an 80% non-refundable deposit is required. The remaining balance, providing there are not any change orders, is due on the date of installation by end of business.
3. The quote is based on measurements provided and is subject to change after field measurements/professional template are conducted. Once the final template is completed, it supersedes any previous drawings, proposals or quotes. Any deviations from the original drawing, proposal or quote involving extra material and/or labor may result in an additional charge to the customer.
4. If applicable, this quote includes one site visit for template and installation. Any additional trips will be subject to additional charges.
5. **IT IS THE RESPONSIBILITY OF THE CUSTOMER TO ENSURE ALL SINK(S), FAUCET(S), COOKTOP(S) AND RELATED ACCESSORIES ARE ONSITE AT TEMPLATE. It is highly recommended to have all appliances, cabinetry, etc. present and in place if counter tops will be affected by any adjacent or installed items.**
6. **No changes can be made post template. A homeowner/decision maker over the age of 18 is required to be present for template and install. Any decisions made at template are final.**
7. 24-hour notice must be given for any cancellation/rescheduling of templates or installs. Customer is subject to a cancellation/rescheduling fee if proper notice is not received and/or customer is a "no show" for any scheduled appointments for the template/installation.
8. There is limitation to the overall sizes available; seam placements are determined by the fabricator once the onsite templates are complete. The final size, countertop configuration and appliance/sink locations will determine final seam locations.
9. All materials have variation. Products (especially natural products) are prone to small cracks, blemishes, voids, fissures that are inherent properties of the product and are not considered product defects. Color, shade, tones, texture, veining, thickness are all common variations. Countertops will NOT be replaced due to variations.
10. Countertop materials are not intended to be used as structural support. Material must be adequately supported in every application. Support/balance for all countertops to be verified at template. Support/balances are NOT included unless otherwise indicated in the quote.
11. Removal of existing countertops and/or any other materials is NOT included in the quote unless otherwise indicated.
12. Leveling, shimming and/or repair of existing cabinetry or supports are not included unless otherwise indicated in the quote.
13. AIOKB and its affiliates are not responsible for damage to walls, cabinets, remaining countertops or tile due to unforeseen site conditions or conditions of existing tops and/or removal of same.
14. Disconnection and/or reconnection of plumbing and/or cook tops, other appliances, electric and/or gas are NOT included in the quote unless otherwise indicated. Dishwashers cannot be installed to solid surfaces and must be secured to the adjacent cabinetry. Customer is responsible for securing the dishwasher appropriately.
15. Most countertops are resistant to surface damage; however, all products can be damaged by force. No material is chip or scratch proof. All countertop surfaces, especially at edges or dishwashers/similar may be subject to chips/damage. Sudden and/or rapid temperature change may damage the product. Any source of heat may damage the product. Solid trivets are always recommended.
16. Counter tops are generally cut straight. Existing walls may not be square and/or straight which may cause gaps and/or spaces between the wall(s) and countertops. It may be necessary for installers to cut into and/or score your walls. Customer is responsible for any wall repair, priming and/or painting that may be required post install unless otherwise indicated in the quote. Priming, painting, wallpaper, tile installation are NOT recommended to be completed until countertops are installed and are NOT included unless the quote indicates otherwise.
17. If available, at customer's discretion, final slab layouts and/or drawings can be provided for approval. If customer opts to view these, if available, customer understands that the approval process may delay the install. IF slab layouts are available and requested by the customer, there may be additional charges to the customer for viewing and/or any alterations, IF possible.
18. Countertop installation may result in dust and debris. Great care will be taken to minimize dust and debris. Customer is responsible for cleanup post install.

**CABINETRY TERMS AND CONDITIONS:**

1. Any cabinet changes that take place up to and at final measure may require additional costs to the homeowner which will be addressed via change order and may include additional delivery/shipping fees.
2. **No changes can be made to the cabinetry after cabinet order submission.**
3. Cabinet lead time is an estimated 6-8 weeks from order submission.
4. IF cabinet delivery is included, delivery will be to customer's driveway or garage only. Someone over the age of 18 must be present for delivery and to assist with unloading the cabinetry - must also sign for and accept the delivery. IF AIOKB is completing installation labor of the cabinetry, we can have a representative available at time of delivery at customer's discretion.
5. UNDERSTAND THAT APPLIANCES, COUNTERTOPS, HARDWARE, DECORATIVE ITEMS, ETC. SHOWN IN THE LAYOUTS/RENDERINGS ARE NOT INCLUDED IN THE PURCHASE PRICE OF THE CABINETS YOU HAVE CHOSEN. ITEMS LISTED IN THE QUOTE ARE THE ITEMS THAT ARE INCLUDED IN THE QUOTE.
6. It is common for doors and drawers to need adjustments over time. Any adjustments necessary post job completion are customer's responsibility.
7. For Wellborn Cabinetry, customer is responsible to adhere to the Wellborn guides for handling, installation and care: https://wellborn.flippingbook.com/p/wellborn-installation-care-warranty-guide/
8. All cabinet box barcodes must be kept until complete installation is done.
9. No discounts and/or credits will be given on any damaged cabinetry. **Damaged cabinetry will be replaced only.** Replacements are subject to standard lead times. If a customer/builder/contractor chooses to keep and/or install the damaged cabinetry, they are accepting that cabinetry as-is and there will be no credits or discounts given for any materials and/or labor to fix said damage.
10. It is highly recommended to provide appliance model numbers prior to cabinet order so that adjustments can be made as needed before the order goes in. Otherwise, standard openings will be allotted for in the design (refrigerator 36" wide x 72" tall, dishwasher 24" wide, 30" wide stove, 30" wide x 18" tall for over the range microwaves, 30" spaces for chimney hoods/vent hoods; custom wall and base appliances will vary and cut out maximum sizes will be provided to the customer). WSG is not responsible for any cabinet modifications that need to be made if appliance model numbers are not provided in advance of cabinet order.
11. **FOR ANY INSTALLATIONS NOT BEING COMPLETED BY AIOKB:**
    CABINETS THAT ARRIVED DAMAGED MUST BE REPORTED WITHIN 24 HOURS. A PHOTO OF THE DAMAGE (CLOSE UP), PHOTO OF THE FULL CABINET, AND PHOTO OF THE BAR CODE MUST BE SENT TO AIOKB IMMEDIATELY. ANY CABINET DAMAGED THAT IS DEEMED TO BE CONCEALED MUST BE REPORTED WITHIN 15 DAYS OF DELIVERY TO QUALIFY FOR CABINET REPLACEMENT. REQUIRED PHOTOS MUST BE SUBMITTED. DO NOT DISCARD ANY DAMAGED CABINET WITHOUT PERMISSION FROM AIOKB.

**TILE/FLOORING/OTHER TERMS AND CONDITIONS:**

1. Buyer/Owner must determine slip resistance suitability and maintainability.
2. Natural stones, ceramic, porcelain, quartz, and related products represent products of nature; we cannot be held responsible in any cause of action resulting from their use in any form.
3. AIOKB makes no expressed or implied warranty, for any particular use.
4. These products inherently lack uniformity and are subject to variation in aesthetics, color, shade, finish, tint, hardness, strength resistance, density, etc.
5. Natural stone may be characterized by dry seams, pits, and fossils. In polished and honed stones, these pits are often filled during the manufacturing process or at the time of installation. These fills can occasionally pop out from normal wear and use. In these instances, it may be necessary to refill these voids as part of a normal maintenance procedure which is the responsibility of the customer.
6. Mosaics with metal are not recommended for use around heavy water areas including tubs, shower surrounds, pools, spas, and any other exterior application.
7. Most tile can be cleaned using warm water and a cloth. For deeper cleaning a mild detergent or glass cleaner can be used. Only use recommended cleaners based on product material type. Do not use abrasive sponges or cleaning agents with strong chemicals as these may harm the products.
8. Grout used should match the tile color. AIOKB is not liable for any issues arising from grout staining or grout left on tiles or the resultant residues or hazing if the customer chooses to use a contrasting grout color. This is especially true with natural stone, marble, and stone/marble like tile.
9. It is normal for grout/caulk lines to crack/change over time as the house settles and moves.
10. After installation vendor disclaims any liabilities.

**REMODEL / RENOVATION ADDITIONAL TERMS AND CONDITIONS:**

1. This agreement is based solely on the observations AIOKB could make with the structure in its current condition at the time this agreement was bid. If additional concealed conditions are discovered once work has commenced, AIOKB will stop work and notify the customer of the unforeseen concealed conditions so that the customer and AIOKB can execute a Change Order for any additional work or materials.

2. It is not customary practice for AIOKB to install any customer supplied materials. If the customer is supplying material(s), the customer warrants that all material supplied is of standard quality or better and free of defects. It is the customer's responsibility to inspect the material and to ensure the material is on the job site prior to the date of installation. The customer understands and agrees that as the supplier of materials, the customer assumes full responsibility and liability for said materials and is also assuring that the products meet all applicable codes and ordinances. AIOKB is not responsible for any customer supplied materials; any installed customer supplied materials are warranty voided once installation is complete.

3. Customer is responsible for reporting any concerns, damage, and warranty claims with the Project Manager as soon as possible.

4. **Warranty:** AIOKB will warranty installation (to exclude countertops, plumbing, and any other work completed by someone other than AIOKB) for a period of 1-year post job completion date. Plumbing warranty will be for a period of 14 days post job completion of the plumbing. Warranty does not cover problems caused by physical or chemical abuse, neglect, improper maintenance, structural settlement, earthquakes, tornadoes, fires, floods, or other acts of God.

5. **Design, layout, and material are final. By signing these terms, you are agreeing to the design, layout, and material on your order. Any changes thereafter, IF POSSIBLE, will require a change order and may be an additional cost.**

6. AIOKB shall not be obligated to perform any work to correct damage caused by termites or other insects, moisture, mold, dry rot or decay and any work to be performed to correct such damage shall be covered by a change order. If any pretreatment for termites or other insects is required, it will be at customer's expense.

7. AIOKB calls attention to the customer to the limitations of matching building materials (included but not limited to trim, carpentry, paint, plaster, drywall, stucco, concrete, masonry, siding, and roofing materials). AIOKB will make every effort to match new and existing materials, texture, colors, stains, finishes, and planes, exact duplication is not promised. AIOKB shall have the right to substitute materials of similar quality, pattern, and design if unable to obtain the exact matching materials.

8. Unless specifically included, electrical work contemplates no change to existing service panel other than the addition of circuit breakers or fuse blocks to distribute electric current to new outlets. Cost incurred in changing point of service, main switch, or meter that may be required by inspector or serving utility shall be paid by the customer the same as any other extra. Changes to existing wiring in areas undisturbed by alterations are not included.

9. AIOKB shall not be held responsible for damage to, or removing of pipes, sprinkler lines, water or sewage disposal systems or conduits in areas of excavating, grading, paving, or construction.

10. Unless specifically indicated, agreed price does not include re-routing of vents, pipes, ducts, or wiring conduits that may be discovered in removal of walls or cutting of openings in walls, floors, or ceilings.

11. AIOKB does not assume any risk to subsoil conditions of the property and if any subsoil conditions which affect the work to be performed are encountered, they will be dealt with at the customer's expense pursuant to a change order. If any testing or an engineered footing is required, it will be at customer's expense.

12. The customer is solely responsible for the location of all lot lines and shall, if requested, identify all corner posts of his lot for AIOKB. If any doubt exists as to the location of lot lines, the customer shall at their own cost, order and pay for a survey. If the customer wrongly identifies the location of the lot lines of the property, any changes required by AIOKB shall be at the customer's expense.

13. Customer shall grant free access to work areas for workers and vehicles and shall allow areas for storage of materials and rubbish. Customer shall also provide utility services required at their own cost. Customer agrees to keep driveways clear and available for movement and parking of vehicles, especially for deliveries. AIOKB and its affiliates shall not be expected to keep gates closed for animals and children. AIOKB shall protect adequately the property and adjacent property subject to this contract but shall not be held responsible for damage to driveways, walks, lawns, trees, and shrubs by movement of vehicles unless due to gross negligence.

14. All materials removed from structure in course of alterations shall be disposed of by AIOKB unless otherwise indicated in the quote and/or as designated by the customer prior to commencement or during construction. All construction rubbish to be removed by AIOKB at termination of work and premises left in a broom-clean condition.

15. Customer agrees to make toilet facilities available to all workers or compensate AIOKB for cost of rented units. This would be addressed as a change order, if desired by customer and must be paid for in full prior to job commencement.

16. AIOKB shall not be held responsible for damage caused by customer or customer's employees, Act of God, soil slippage, earthquake, fire, riot, or civil commotion or acts of public enemy.

17. AIOKB agrees to diligently pursue work through to completion, but shall not be responsible for delays for any of the following reasons: failure of customer to sign off on the selections in a timely fashion, acts of neglect or omissions of customer or customer's employees or agent, acts of God, inclement weather, extra work requested by customer, acts of public enemy, riots or civil commotion, inability to secure materials through regular recognized channels, imposition of government priority or allocation of

materials, failure of customer to make payments when due, or delays caused by inspections, or changes ordered by inspectors of governmental bodies concerned.

18. Unless specifically included in this agreement AIOKB shall not be held responsible for any bonds, liens, or assessments on existing real estate, nor sewer or utility assessments not yet a lien on said property.

19. Customer agrees to remove or protect any personal property, inside and out, including shrubs and flowers which cannot be protected adequately by AIOKB and its affiliates and AIOKB shall not be held responsible for damage to or loss of said items.

20. Anything herein notwithstanding, AIOKB shall not be responsible for work performed by contractors or individuals neither contracted nor employed by it.

21. Unless herein specifically provided for, AIOKB shall not be responsible for removal and for disposal of any "Hazardous Materials" as defined by any Federal, State or Local law, regulation, or ordinance, including without limitation, lead base paint, mold, asbestos and asbestos containing material, and if such "Hazardous Materials" are encountered in the course of the AIOKB's work, then customer shall pay any and all additional costs to remove and/or dispose of such "Hazardous Materials" in accordance with such Federal, State, and Local laws, regulations, and ordinances. CUSTOMER HEREBY WAIVES AND RELEASES AIOKB FROM ALL LIABILITY FOR ANY DAMAGES, BOTH TO PERSON AND PROPERTY, SUFFERED BY CUSTOMER AS A RESULT OF AIOKB'S REMOVAL OF HAZARDOUS WASTE INCLUDING LEAD BASED PAINT. CUSTOMER AGREES TO INDEMNIFY AND HOLD AIOKB HARMLESS FOR ANY DAMAGES SUFFERED BY AIOKB AS A RESULT OF CUSTOMER OR ANY THIRD PARTY MAKING A CLAIM FOR DAMAGES AGAINST AIOKB IN CONNECTION WITH AIOKB'S REMOVAL OF HAZARDOUS WASTE INCLUDING LEAD BASED PAINT. SHOULD A LEGAL ACTION BE FILED AGAINST AIOKB FOR SUCH A CLAIM, CUSTOMER SHALL INDEMNIFY AIOKB FOR ALL DAMAGES AND COST SUFFERED BY AIOKB INCLUDING REASONABLE ATTORNEY'S FEES.

22. The customer further covenants that there are no restrictions, easements of covenants restricting or requiring consent to the work to be performed. AIOKB shall not be responsible for obtaining any variances should such variances by required to obtain a building permit.

23. Customer agrees that upon signing this contract, either before or after acceptance by AIOKB, to be bound thereby and in event of a breach of this contract by said customer, AIOKB shall be entitled to full compensation for work performed, loss of profits, and in event of a legal dispute, all costs and reasonable attorney's fees. In no event shall AIOKB's recovery be less than 20% of the contract sum.

**Additional contract documents are part of this agreement, as applicable:**

1. Wellborn Cabinet Purchase Agreement
2. Payment Contract
3. Average Timelines Document

**Signature:** _Allison Raber_   _Ian Raber_

**Print Name:** _Allison Raber_   _Ian Raber_

**Date:** _2/21/22_   _2/21/22_



Amendment to All in One Kitchen & Bath Terms and Conditions of **Proposal for Allison & Ian Raber - Kitchen Remodel** (Contract)

In reference to the **Proposal for Allison & Ian Raber - Kitchen Remodel** (agreement) made by and between Allison & Ian Raber ("Owner") and All in One Kitchen & Bath and dated 02/21/2022, such agreement is hereby amended to include the following conditions.

1. Regarding Item 5 under "General Terms and Conditions": In the event that All in One Kitchen & Bath has delayed or not been present for a reasonable amount of time on the jobsite, the 2% late fee will be waived for that period of time.
2. Regarding Item 20 under "General Terms and Conditions": No photos or videos will be used that identify the Owners by name or exact location. Only general City or Street names will be used in reference to any publicly posted photos or videos.
3. Regarding Item 4 under "Countertop Terms and Conditions": Any additional trip fees will only be assessed to the Owner due to actions or inactions of the Owner.
4. Regarding Item 5 under "Countertop Terms and Conditions": Owner is only responsible for supplying any items that are not listed in the contract.
5. Regarding Item 12 under "Countertop Terms and Conditions": All in One Kitchen & Bath will level and shim new cabinetry to prepare for countertop template and installation within reason. If any existing flooring or subfloor or any structure of the existing home results in beyond normal shimming and leveling, there will be an additional charge to the customer addressed via change order at the time of installation.
6. Regarding Item 18 under "Countertop Terms and Conditions": All in One Kitchen & Bath will complete a broom sweep clean to work areas at the completion of the job.
7. Regarding Item 11 under "Cabinetry Terms and Conditions": All in One Kitchen & Bath will inspect the cabinetry upon installation.
8. Regarding Item 4 under "Remodel/Renovation Additional Terms and Conditions": Any 3rd party warranties will be provided at customer's request dependent upon the use of a 3rd party at time of installation.
9. Regarding Item 23 under "Remodel/Renovation Additional Terms and Conditions": Owner agrees that upon signing the contract, either before or after acceptance by All in One Kitchen & Bath, to be bound thereby and in event of breach of contract by the Owner, All in One Kitchen & Bath shall be entitled to full compensation for work performed, loss of profits. In event of a legal dispute, the prevailing parties will be entitled to all costs and reasonable attorney's fees. In no event shall All in One Kitchen & Bath's recovery be less than what is allowable under Michigan law.

The undersigned agree that the terms of this amendment are made effective as of February 21, 2022 (date of contract).

_A Raber_____ Owner          _Ian R_____ Owner

_2|21|22_____ Date          _2|2|22_____ Date

_Cara A. Apleet_____ Contractor
FOR ALL IN ONE KITCHEN & BATH
_2|21|22_____ Date



**Customer Name:** **RABER**

**Payment Contract as Follows:**

**NO REFUNDS on deposits per contract.**

**This is an agreement for you to pay the following payments on the days they are due. This is not a reflection of timeline or work being completed in your home. All payments are due as specified. Change orders, if any, to be paid in full at time of approval.**

| | | |
|---|---|---|
| 60% Job Deposit | $ | 29,329.02 |
| | **TOTAL DEPOSIT** | $29,329.02 |

**Other Payment Breakdown:**

| | | |
|---|---|---|
| Payment One- Due 3 days before start date | $ | 4,000.00 |
| Payment Two- Due 7 days after start date | $ | 3,675.00 |
| Payment Three- Due 14 days after start date | $ | 3,675.00 |
| Payment Four- Due 21 days after start date | $ | 3,675.00 |
| Payment Five- Due 28 days after start date | $ | 3,675.00 |
| Final Walkthrough- Due on final walkthrough date | $ | 852.68 |
| | **Total Labor/Other Payments** | $19,552.68 |
| | **Grand Total** | $48,881.70 |

Customer Signature _apal' y clan R_____  Date _2|2|122_

# CUSTOMER REPORT



## PROJECT DETAILS

Contract#

Job Name:              RaberKitchen

Dealer Name:           Saundra Ward

Dealer Company:        All in One Custom Renovations

Dealer Email:          saundra@renovateit.com

Dealer Phone:          517-552-5985

Dealer Address:

4286 E. Grand River Ave
Howell, MI 48843 United States


Designer Name:         Cara Spleet

Customer Name:         Allison & Ian Raber

Customer Company:

Customer Email:

Customer Phone:

Shipping Address:

30936 Tanglewood Dr.
Novi,

INITIAL

# Wellborn Select Series

## Options

| Option | Value |
| --- | --- |
| Series | Select Series |
| Door Style | Camden Square MDF |
| Door Construction Type | Full Overlay |
| Hinge Type | Smooth Close Hinge |
| Drawer Front Style Option | Classic Drawer Front Option - Camden |
| Plywood Drawer Upgrade | Standard Drawer Box Construction |
| Wood Drawer Soft Close Upgrade | Wood Drawer Soft Close |
| Wood Species | Medium Density Fiberboard |
| Finish | Glacier |
| All Plywood Construction Option | No |
| Plywood Cabinet End Option | No |
| Extended Lead Time Verification | Yes, I have verified the lead time against the current Door & Wood Species Availability Chart |

## Products

| # | SKU | Qty | Description | Weight | Ext. Price |
|---|-----|-----|-------------|--------|------------|
| 1 | SB36 | 1 | Sink Base Cabinet | 58.0 | 630.00 |
| 2 | B18WB2 | 1 | Wastebasket Base Cabinet(INS) | 70.0 | 984.00 |
| 3 | W2442SDR | 1 | 42" HIGH WALL CABINETS-Single Door | 52.0 | 586.00 |
| 3.1 | R | 1 | Right Hinge | 0.0 | 0.00 |
| 3.2 | MFEL (W) | 1 | Matching Finished End Left Wall | 0.0 | 45.00 |
| 3.3 | ADRW_L | 3.5 | Applied Door Option (Most Wall Cabinets) | 0.0 | 332.50 |
| 4 | W2442SDL | 1 | 42" HIGH WALL CABINETS-Single Door | 52.0 | 586.00 |
| 4.1 | L | 1 | Left Hinge | 0.0 | 0.00 |
| 4.2 | ADRW_R | 3.5 | Applied Door Option (Most Wall Cabinets) | 0.0 | 332.50 |
| 5 | W2442SDL | 1 | 42" HIGH WALL CABINETS-Single Door | 52.0 | 586.00 |
| 5.1 | L | 1 | Left Hinge | 0.0 | 0.00 |
| 6 | W2442SDL | 1 | 42" HIGH WALL CABINETS-Single Door | 52.0 | 586.00 |
| 6.1 | L | 1 | Left Hinge | 0.0 | 0.00 |
| 6.2 | ADRW_L | 3.5 | Applied Door Option (Most Wall Cabinets) | 0.0 | 332.50 |
| 7 | RW372424 | 1 | 24" High Refrigerator Wall Cabinet | 51.0 | 635.00 |
| 8 | 2DB18 | 1 | Two Drawer Base Cabinet | 34.0 | 341.00 |
| 9 | 3DB18 | 1 | Three Drawer Base Cabinet | 55.0 | 553.00 |
| 10 | AB2424L | 1 | Angle Base Cabinet | 54.0 | 769.00 |
| 10.1 | L | 1 | Left Hinge | 0.0 | 0.00 |
| 11 | W1842L | 1 | 42" HIGH WALL CABINETS | 43.0 | 477.00 |
| 11.1 | L | 1 | Left Hinge | 0.0 | 0.00 |
| 11.2 | MFER (W) | 1 | Matching Finished End Right Wall | 0.0 | 45.00 |
| 12 | W1842R | 1 | 42" HIGH WALL CABINETS | 43.0 | 477.00 |
| 12.1 | R | 1 | Right Hinge | 0.0 | 0.00 |
| 12.2 | MFEL (W) | 1 | Matching Finished End Left Wall | 0.0 | 45.00 |
| 13 | W3024 | 1 | 24" High Wall Cabinet | 34.0 | 482.00 |
| 14 | AW42R | 1 | 42" High Angle Wall Cabinet | 42.0 | 548.00 |
| 14.1 | R | 1 | Right Hinge | 0.0 | 0.00 |
| 15 | CSB36R | 1 | Corner Sink Base Cabinets | 80.0 | 803.00 |
| 16 | B24 | 1 | Base Cabinet | 58.0 | 612.00 |

| # | SKU | Qty | Description | Weight | Ext. Price |
|---|-----|-----|-------------|--------|------------|
| 16.1 | MFEL (B) | 1 | Matching Finished End Left Base | 0.0 | 65.00 |
| 17 | 3DB24 | 1 | Three Drawer Base Cabinet | 62.0 | 631.00 |
| 18 | | 1 | LOOSE DOOR 17-5/8 X 29-5/8 | 10.0 | 261.00 |
| 19 | | 1 | LOOSE DOOR 17-5/8 X 29-5/8 | 10.0 | 261.00 |
| 20 | | 1 | LOOSE DOOR 17-5/8 X 29-5/8 | 10.0 | 261.00 |
| 21 | | 1 | LOOSE DOOR 23-5/8 X 29 5/8 | 10.0 | 419.00 |

## Price Computation

| | |
|---|---|
| Total Cabinets Price | 12,685.50 |
| 37 Hinge Type | 222.00 |
| 11 Drawer Front Style Option | 880.00 |
| 10 Plywood Drawer Upgrade | 0.00 |
| 10 Wood Drawer Soft Close Upgrade | 1,200.00 |
| Finish (0.0%) | 0.00 |
| All Plywood Construction Option (0.0%) | 0.00 |
| Plywood Cabinet End Option (0.0%) | 0.00 |
| Total Price | 14,987.50 |

## Total

| | |
|---|---|
| Discounted Price | 14,987.50 |
| Installation | 0.00 |
| Design Charge | 0.00 |
| Shipping | 450.00 |
| Tariff Charge | 0.00 |
| Sales Tax | 0.00 |
| Total | 15,437.50 |

INITIAL

# Wellborn Select Series 2

## Options

| Option | Value |
| --- | --- |
| Series | Select Series |
| Door Style | N/A - mouldings & misc. items |
| Door Construction Type | |
| Hinge Type | |
| Drawer Front Style Option | |
| Plywood Drawer Upgrade | |
| Wood Drawer Soft Close Upgrade | |
| Wood Species | Maple |
| Finish | Glacier |
| All Plywood Construction Option | |
| Plywood Cabinet End Option | |
| Extended Lead Time Verification | Yes, I have verified the lead time against the current Door & Wood Species Availability Chart |

INITIAL

## Products

| # | SKU | Qty | Description | Weight | Ext. Price |
|---|-----|-----|-------------|--------|-----------|
| 1 | 3/4REP32108V | 1 | 3/4" Veneer Refrigerator End Panel | 22.0 | 772.80 |
| 2 | FBP9648V | 1 | Finish Back Panels Base | 15.0 | 654.35 |
| 3 | F630 | 1 | 30" High Solid Wood Fillers | 3.0 | 101.20 |
| 4 | S3/4 | 3 | SCRIBE MOULDING | 3.0 | 186.30 |
| 5 | SLRM | 3 | Small Light Rail Moulding | 3.0 | 565.80 |
| 6 | BTSM | 3 | Base Toe Space Cover Matching | 3.0 | 193.20 |
| 7 | F342 | 1 | 42" High Solid Wood Fillers | 5.0 | 96.60 |
| 8 | BM | 1 | BASE MOULDING | 1.0 | 223.10 |
| 9 | BM | 1 | BASE MOULDING | 1.0 | 223.10 |
| 10 | S3/4 | 6 | SCRIBE MOULDING | 6.0 | 372.60 |
| 11 | TUKIT | 2 | Touch Up Kit | 2.0 | 164.00 |
| 12 | TUSPRAY | 1 | Touch Up Spray | 1.0 | 45.00 |
| 13 | B8020 | 1 | Aerosol Clean & Polish | 1.0 | 17.00 |
| 14 | B8021 | 1 | Dusting Cloth | 1.0 | 8.00 |
| 15 | B8022PK3 | 1 | Applicator Cloths | 1.0 | 15.00 |
| 16 | SLRM | 1 | Small Light Rail Moulding | 1.0 | 188.60 |
| 17 | SM3/4 | 3 | SHOE MOULDING | 3.0 | 189.75 |
| 18 | IC3/4 | 1 | Inside Corner Moulding | 1.0 | 67.85 |
| 19 | UF396 | 1 | Solid Wood Universal Filler | 10.0 | 227.70 |

INITIAL

| Total | |
|---|---|
| Total Price | 4,311.95 |
| Discounted Price | 4,311.95 |
| Installation | 0.00 |
| Design Charge | 0.00 |
| Shipping | 0.00 |
| Tariff Charge | 0.00 |
| Sales Tax | 0.00 |
| Total | 4,311.95 |

INITIAL

## Job Total

| | |
|---|---:|
| Total Price | 19,299.45 |
| Discounted Price | 19,299.45 |
| Installation | 0.00 |
| Design Charge | 0.00 |
| Shipping | 450.00 |
| Tariff Charge | 0.00 |
| Sales Tax | 0.00 |
| Job Total | 19,749.45 |
| **DISCOUNTED TOTAL** | **17,401.54** |

INITIAL





Customer to install outlet at the top of the cabinet location for UCL

Scribe moulding at tops of uppers & sides/ends as applicable

Light rail moulding
LED under cabinet lighting
Customer to determine control location

Cust to add outlet here

Backsplash tile - standard split subway lay
Metal L channel trim

Base cabinet build up
AIOKB installing laminate floors
Customer providing, AIOKB installing base & shoe for floors

LIGHT NOT INCL.

WINDOW

CUSTOMER KEEPING DISHWASHER

37 9/16"    3/16"    36"    18"    24"    36"    28 3/8"

36 13/16"    3/4"    24"    24"    24"    42 1/8"    20 7/8"
3 3/16"

3 1/8"
1 1/4"

61 11/16"

34 1/2"

Designed: 02.21.22
Printed: 02.21.22

Design drawings are provided for the fair use by the client or his agent in completing the project as listed within this contract

All dimensions and size designations must be verified on the site to fit job conditions Client accepts these drawings as is and can use them on its own risk.

Design: RaberKitchenFINAL

Drawing #: 2

Display settings 9/16" = 1'

INITIAL



CUSTOMER KEEPING FRIDGE

CUSTOMER KEEPING DISHWASHER

**Bury telephone line
on this wall -
hang line on nail in wall
patch drywall
**NOTE: drywall patch
may not be seamless
due to wall paper**

24"

24"

102 7/16"

78 7/16"

12"

12"

96"

3/16'

3/16'

Design drawings are provided
for the fair use by the client or
his agent in completing the
project as listed within this contract

All dimensions and size designations
must be verified on the site to fit job conditions
Client accepts these drawings as is and
can use them on its own risk.

Designed: 02.21.22
Printed: 02.21.22

Display settings 9/16" = 1'

Drawing #: 3

Design: RaberKitchenFINAL



Customer to install outlet at the top
of the cabinet location for UCL

Scribe moulding at tops of
uppers & sides/ends as applicable

Light rail moulding - include
under cab.over fridge if room

LED under cabinet lighting
Customer to determine control location

Base cabinet build up
AIOKB installing laminate floors
Customer providing, AIOKB installing
base & shoe for floors

UF396 cut to fit
run floor to ceiling

Backsplash tile - standard split subway lay
Metal L channel trim

Cust.to move outlet right

CUSTOMER KEEPING FRIDGE MICRO

CUSTOMER KEEPING EXIST

CUSTOMER KEEPING COOK

CUSTOMER KEEPING FRID

37"    3/4" 18"    30"    18"    24"    10"
3"

37"    3/4" 18"    30"    18"    12"    22"
3"

34 1/2"    6'1 1/2"

All dimensions and size designations
must be verified on the site to fit job conditions
Client accepts these drawings as is and
can use them on its own risk.

Design drawings are provided
for the fair use by the client or
his agent in completing the
project as listed within this contract

Designed: 02.21.22
Printed: 02.21.22

Display settings 7/16" = 1'

Design: RaberKitchenFINAL

Drawing #: 4

INITIAL

**FBP9648V - CUT TO COVER PENINSULA BACK**

**3 LOOSE DOORS TO BE INSTALLED EVENLY ACROSS PENINSULA BACK 1 LOOSE DOOR FOR PENINSULA END**

**BASE MOULDING AROUND BACK AND SIDE OF PENINSULA ONLY - 45 AT TOE KICK FRONT**

**INSIDE CORNER MOULDING FOR CORNER BETWEEN LOOSE PANELS**

1 3/8"  18"  2 5/16"  18"  2 1/4"  18"  1 5/16"

All dimensions and size designations must be verified on the site to fit job conditions Client accepts these drawings as is and can use them on its own risk.

Design drawings are provided for the fair use by the client or his agent in completing the project as listed within this contract

Designed: 02.21.22
Printed: 02.21.22

Display settings 5/8" = 1'

Drawing # 5

Design: RaberKitchenFINAL

INITIAL



Design drawings are provided for the fair use by the client or his agent in completing the project as listed within this contract

Designed: 02.21.22
Printed: 02.21.22

Display settings 9/16" = 1'

All dimensions and size designations must be verified on the site to fit job conditions Client accepts these drawings as is and can use them on its own risk.

Drawing #: 6

Design: RaberKitchenFINAL

LIGHT NOT INCL.

35 7/8"

9 13/16" 11 7/8"

18"

24"

20 3/16"

1 3/8"

5/8"

3/4"

6'1 11/16"

34 1/2"

LIGHT NOT INCL.

Customer to add outlet
for peninsula end

Loose door field installed

Base moulding around bottom,
45 at toe kick return

23 3/8"  13/16"

All dimensions and size designations
must be verified on the site to fit job conditions
Client accepts these drawings as is and
can use them on its own risk.

Design drawings are provided
for the fair use by the client or
his agent in completing the
project as listed within this contract

Design: RaberKitchenFINAL

Drawing #: 7

Display settings 11/16" = 1'

Designed: 02.21.22
Printed: 02.21.22

INITIAL

**Quote Lines:**

**Area #1**
Cambria Marwell
Finished Edge – Double Treeline aka Double Bevel
Appliance Edge
1 - 30" Undermount Sink Cutout
1 Faucet Hole
2 - 1" Outside Radius Corner
1 - 35" Clipped Corner

**Quote Name:**
RABER KITCHEN

Icr
INITIAL
2/21/2022 1:12:49 PM

**Drawing:**



DRYWALL - NO TILE

****SLAB SMITH*****

TILE

TILE

TILE

| | Unfinished |
|---|---|
| | Appliance |
| | Double Treeline aka Double Bevel |

2/21/2022 1:12:49 PM

INITIAL



# LUMBERMEN'S WARRANTY

Lumbermen's Counter Solutions warrants the purchaser that our fabricated products will be free of defects in workmanship for one (1) year from the date of purchase.

Lumbermen's Counter Solutions warranty obligation is limited solely to the repair or replacement of the fabricated product, and excludes labor charges.

Lumbermen's warranty does not include the following:
A)   Scratches
B)   Heat Related Damage
C)   Improper Use
D)   Water Damage, including seams by sink areas
E)   Chemical Damage, including household cleaners

Quartz countertops that are ordered furnished only (vanity tops) are inspected by our fabricator's prior to shipping. It is the purchasers responsibility to inspect tops at the time of delivery. All damage claims on furnished only tops are to be reported immediately.

Quartz countertops that are ordered furnished only should be installed immediately to prevent damage.

Some quartz patterns are directional, therefore Lumbermen's will not guarantee color matches at seams or joints.

Note "brand" warranty information on products individual web site.

Icr
INITIAL
36



**WAIVER**

**VARIATIONS** IN THE NATURE STONE (QUARTZ) COLOR, PATTERN, SIZE, SHAPE AND SHADE ARE INHERENT AND UNIQUE CHARATERISTICS TO BE EXPECTED WITH THIS PRODUCT. THIS DOES NOT AFFECT THE PRODUCT PERFORMANCE IN ANY MANNER.

**COLOR BLOTCHES** ARE INTENDED AND DESIGNED INTO MANY COLORS TO ENHANCE THE NATURAL BEAUTY. THEY ARE NOT CONSIDERED A DEFECT.

**VEINED PATTERNS** ARE ALSO INTENDED AND DESIGNED INTO MANY COLORS TO ENHANCE THE NATURAL BEAUTY. EVERY EFFORT IS MADE DURING PRODUCTION TO KEEP THE MATERIAL FLOW AND MOVEMENT THE SAME DIRECTION FOR THESE COLORS. DUE TO THE RANDOM NATURE OF VEINED COLORS IN TERMS OF DIRECTION, HUE, THICKNESS AND VEIN COLOR VARIATION ,THERE IS NO GUARANTEE THAT THE DESIGN WILL MATCH UP ACROSS SEAMS, MITERS AND AT LAMINATED (STACKED) EDGE PROFILES. VARIATION AT THESE POINTS IS COMMON AND TO BE EXPECTED AND NOT CONSIDERED A DEFECT.

**SAMPLES** ARE FROM SMALL SELECT CUTS FROM A SLAB, THEY DO NOT EXHIBIT ALL THE CHARACTERISTICS OF A COLOR AND COMBINED WITH LIMITATIONS ARE NOT FULLY REPRESENTATIVE OF WHAT WILL BE INSTALLED.

**WHITE CLIFF** IS A UNIQUE, PURE WHITE COLOR AND SHOWS MARKINGS CAUSED DURING NORMAL USE.

**PARYS, MINERA, ROSSLYN AND MENAI** ARE UNIQUE MEMBERS OF CAMBRIA'S JEWEL COLLECTION. THESE SPECIAL QUARTZ COLORS HAVE AESTHETICS FOUND ONLY IN NATURE THAT ORIGINATE FROM MINERALS IN THE EARTH'S CRUST. IN THAT SPIRIT, BOTH OF THESE DISTINCTIVE AND TREASURED COLORS HAVE SURFACE DEVIATION TO THE TOUCH AND APPEARANCE. OUR DESIRE, AND THE MARKET DEMAND FOR THESE LOOKS COMPEL US TO OFFER THEM TO YOU AS THEY ARE, NATURALLY DOMINATED IN FREE FLOWING QUARTZ CRYSTALS.

**SOME CAMBRIA COLLECTIONS** CAPTURES ALL THE MOVEMENT AND UNPREDICTABILITY OF NATURE, IN A RANGE OF BOTH NEUTRAL AND VIBRANT TONES. SAMPLES ARE LIMITED TO 3X3'S AND 12X12'S AND CAN NOT POSSIBLY REPRESENT THE VARIATIONS OF COLORS AND VEINING IN THE ENTIRE SLAB, WHEN POSSIBLE PLEASE VISIT A CAMBRIA DESIGN GALLERY TO VIEW SLABS.

**REQUESTS** FOR PARTICULAR VARIATION AND COLOR CANNOT BE POSSIBLE DUE TO THE NATURAL CHARACTERISTICS OF QUARTZ.

CUSTOMER SIGNATURE: _Areals_ _clm_ _n_____

JOB NAME: _Raber Kitchen_____

DATE: _____



## CABINET PURCHASE AGREEMENT

IT IS OUR DESIRE THAT YOU BE COMPLETELY SATISFIED WITH YOUR DECISION TO PURCHASE WELLBORN CABINETRY.

ALL HARDWOODS, BEING A PRODUCT OF NATURE VARY FROM ONE PIECE TO THE NEXT, EVEN FROM THE SAME TREE, EACH HAVING ITS OWN CHARACTERISTICS. THEREFORE, EACH PIECE OF WOOD USED TO BUILD YOUR CABINETS IS UNIQUE TO THESE CHARACTERISTICS.

WELLBORN BELIEVES THAT IT IS IMPORTANT THAT YOU ARE AWARE OF THE SPECIAL EFFECTS USED TO CREATE THE FINISH OR TECHNIQUE YOU HAVE CHOSEN. THE RESULT OF THESE FINISH TECHNIQUES ARE INTENTIONAL AND WILL VARY FROM ONE CABINET TO THE NEXT. THE EFFECTS OF THESE TECHNIQUES IN AN ENTIRE SETTING MAY BE DIFFERENT THAN THOSE IN THE INDIVIDUAL SAMPLE ON WHICH YOU BASED YOUR SELECTION.

UNDERSTAND THE FOLLOWING:
*   THE CONSTRUCTION OF THE CABINETS I AM PURCHASING.

*   THE CHARACTERISTICS OF THE SPECIFIC WOOD I AM PURCHASING.

*   SEASON/ENVIRONMENT CHANGES WILL CAUSE WOOD TO SHRINK AND EXPAND WITH THE CABINETS I AM PURCHASING.

*   THE FINISH, INCLUDING PAINTED CHARACTERISTICS OF THE CABINETS I AM PURCHASING.

*   THE DELIVERY TIME FRAME, INCLUDING DELAYS OF THE CABINETS I AM PURCHASING.

*   UPON ORDERING MY CABINETS THERE CAN BE NO CANCELLATIONS, CHANGES OR RETURNS.

*   MINOR ADJUSTMENTS OF MY CABINETS MAY BE NECESSARY INCLUDING TOUCH UPS. THESE ADJUSTMENTS AND TOUCH UPS ARE MY RESPONSIBILITY.

PLEASE SIGN BELOW INDICATING THAT YOU HAVE READ THE ABOVE STATEMENTS AND ARE AWARE THAT THE EFFECTS ARE RANDOM AND WILL BE FOUND THROUGHOUT YOUR CABINETS. YOUR SIGNATURE INDICATES THAT WELLBORN CABINETRY WILL NOT BE HELD RESPONSIBLE IN THE EVENT THESE CHARACTERISTICS ARE FOUND TO BE LESS DESIRABLE THAN EXPECTED ONCE INSTALLED IN YOUR HOME.

DEALER SIGNATURE: _Cara L. Apleet_ DATE: 2/21/22

HOMEOWNER SIGNATURE
(OPTIONAL): _dealer_ _dm_ DATE: 2/21/22

**2021**

_Lumbermen's_

  

**Detail**

**DOOR MATERIAL:**
MDF

**PRICE COLUMN: 4**

**ORDERING CODE: CMS**

Notes:
- Profiled Door and Slab Drawer Front Edges
- Raised Center Panel Appearance
- One piece routed Door Construction
- Classic Drawer Front Option Available
- Hardware opening top drawer: 1⅜"



Wall    Base    Standard Drawer Front Configuration    Classic Drawer Front Option

## DOOR/DRAWER CONSTRUCTION

| DOOR CONSTRUCTION | FIVE PIECE DRAWER FRONT CONSTRUCTION | | |
|---|---|---|---|
| – 8" to 24" wide<br>– Raised Center Panel<br>– Standard rails and stiles | – Less than 5⅜" Slab | – 5⅜" to 8⅛" high<br>– Raised Center Panel<br>– Reduced width rails<br>– Standard stiles | – 8⅛" to 22" high<br>– Raised Center Panel<br>– Standard stiles and rails |

## DOORS PREPPED FOR GLASS



Decorative Door Frame    Traditional Mullion Style

- All cope and tenon doors greater than 48" high will have a center rail and two panel openings
- Camden Square MDF door style will not be routed for inserts and will require clips to hold inserts to the back of the Decorative Door Frame or Mullion Door
- Not available for open cabinets without doors, any cabinet with a kit installed or cabinets with options that remove the doors



INITIAL

**THE SELECT SERIES — STANDARD CONSTRUCTION SPECIFICATIONS**

### FINISH

Cabinet components are machine sanded to prepare the surface for staining. Wellborn hand rubs the stain to enhance the natural wood grain. Three coats of finish, including two coats of high moisture resistant sealers and one top coat of high molecular weight synthetic catalyzed varnish, result in a durable finish. Natural finishes receive two coats of sealer and one top coat. **The Select Series has a machine sanded finishing process and does not include the detailed hand sanding technique featured in the Premier or Estate Series. The following door styles are shared between Select and Premier: Alto, Belmont, Bishop, Harmony, Hartford, Prairie and Trestle. These will have the Select Series quality sanding and finishing even when ordered in the Premier Series. Wellborn Cabinet, Inc. does not recommend designs combining these series.**

### FACE FRAMES

1¾" x ¾" Thick kiln-dried solid wood stile and rail members. The center stiles are ¾" x 3½" solid wood. On all blind corner base and blind corner wall cabinets, the center stiles are ¾" x 6½" solid wood. All face frame joints are precisely aligned with blind mortise and tenon, glued and stapled at all joints.

### END PANELS

½" Thick industrial grade furniture board with natural maple wood grain laminate exterior resistant to household chemicals. Interior is wood grain laminate. The top and bottom edges of wall cabinet end panels are banded with wood grain edge banding. End panels are machined to accept tops, bottoms and back panels.

### WALL CABINET TOPS AND BOTTOMS & BASE CABINET BOTTOMS

½" Thick industrial grade furniture board. These components are laminated with wood grain laminate. A dado joint, glue and staples are used to attach the top and bottom into face frames, end panels and hanging rails.

### BACKS

All backs are ⅛" thick wood grain MDF printed on the interior side. Wall cabinet backs are reinforced with ¹¹⁄₃₂" x 3½" laminated fiberboard hanging rails at the top and bottom. Wall cabinet backs are recessed and stapled into end panels, hanging rails and shelves. Base cabinet backs are attached in the same manner; the top and bottom of the base cabinet have ¹¹⁄₁₆" x 3½" laminated fiberboard hanging rails securing the back to the top of the end panel.

### SHELVES

#### Wall Cabinets — Adjustable Shelves

All wall cabinet shelves are adjustable and made of ¾" thick industrial grade furniture board. The shelves are laminated with a wood grain laminate which is resistant to water and household chemicals. The front edge of the shelf is banded with wood grain edge banding. The cabinet sides are drilled for shelf supports which are adjustable at 2½" increments.

#### Base Cabinets — Adjustable Shelves

All base cabinets have fully adjustable ¾" thick industrial grade furniture board shelves. The shelves are 10¾" deep and laminated with a wood grain laminate. The front edge is banded with a wood grain or white edge banding.

### BASE TOE BOARD

The toe kick for base, vanity, utility and oven cabinets is ½" x 4½"— industrial grade furniture board. Toe kicks are unfinished and have rodent proof captive construction.

### DRAWER — INNER BOX CONSTRUCTION

#### Sides, Sub-Front and Back

The inner box construction includes ¾" wood grain furniture board drawer sides, and ½" sub-front and back. All backs and sub-fronts are tenoned into the sides, glued and stapled. The drawer box is screwed to the drawer front with four screws and is a full depth drawer. The drawer has a 75 lb. weight capacity.

#### Bottoms

⅛" Wood grain printed hardboard drawer bottoms dadoed to accept both sides, glued and stapled.

### DRAWER SLIDES

Drawers have epoxy coated side mount captive slides that provide smooth, easy operation. The slide has positive stop opening and self-closing features. Drawer slides fit into a bracket mounted to the hanging rail. The bracket allows horizontal drawer adjustability.

### 6–WAY ADJUSTABLE CONCEALED HINGES

Hinges are 6-way adjustable, chrome finished and self-closing with a concealed hinge design.

PER
INITIAL

The Select Series has a machine sanded finishing process and does not include the detailed hand sanding technique featured in the Premier or Estate Series. Therefore, Wellborn Cabinet, Inc. does not recommend designs combining these series.



CONSTRUCTION

## Wall



¾" x 1¾" Kiln-dried solid wood face frames; mortised and tenoned, glued and stapled

½" Natural maple wood grain laminated furniture board end panels finished on top and bottom edges*

Hanging rail dadoed to receive cabinet floor

Interior is wood grain laminate**

Doors have 6-way adjustable WellLine® concealed hinges

¹¹⁄₁₆" x 3½" Wood grain laminated fiberboard hanging rails

½" Wood grain laminated furniture board top

⅛" Wood grain printed MDF back

¾" Wood grain laminated furniture board adjustable shelves with edge banding; WellLock Shelf Clips®

½" Wood grain laminated furniture board bottom

¾" x 3½" Solid wood center stile where applicable***

*** Without center mullion is standard on cabinets 30"- 36" wide

*   For end panel options, see page Select–1–44.
**   For White and Linen Laminate, Paints and Paints with Glazes, the interior and exterior will be natural maple wood grain laminate.

## Base



¾" x 3½" Solid wood center stile where applicable***

¹¹⁄₁₆" x 3½" Wood grain laminated fiberboard hanging rails

¼" Wood grain printed MDF back

½" Natural maple wood grain laminated furniture board end panels*

4½"H x 3¾"D Toe kick cut-out, ½" unfinished furniture board toe kick extends to cabinet floor for captive construction

½" x 3" I-Beam furniture board support dadoed into front, back and side

¾" Wood grain laminated furniture board adjustable half depth shelves with edge banding; dual locking WellLock Shelf Clips®

½" Wood grain laminated furniture board bottom (solid wood braces on 36" wide and larger cabinets)

¾" x 1¾" Kiln-dried solid wood face frames; mortised and tenoned, glued and stapled

Hanging rail dadoed to receive cabinet floor

Interior is wood grain laminate**

*** Without center mullion is standard on cabinets 30"- 36" wide

*   For end panel options, see page Select–1–44.
**   For White and Linen Laminate, Paints and Paints with Glazes, the interior and exterior will be natural maple wood grain laminate.

## Drawer



¾" Wood grain laminated furniture board drawer sides, tenoned to accept ½" sub-front and back

Epoxy coated captive self-closing drawer slides (drawer has a 75 lb. weight capacity)

¼" Wood grain printed hard board drawer bottom

¾" Solid wood drawer front*

| DRAWER UPGRADE OPTIONS | |
|---|---|
| **PLYWOOD DRAWER UPGRADE** | **SOLID WOOD DRAWER FULL EXTENSION DRAWER SLIDES** |
| • ⅝" Plywood dovetail drawer in natural finish<br>• Smooth, undermount, full access, soft close drawer slides<br>• Smooth quiet drawer | • ⅝" Solid hardwood drawer box in natural finish<br>• Dovetail construction<br>• Full extension undermount drawer slides<br>• Soft close function<br>• Keeps items from shifting<br>• Smooth, quiet drawer<br>• Prevents rebounding |
| See Select –1–43 for ordering codes | |

*   For laminate door styles in White and Linen, the cabinet interior and exterior are wood grain laminate, the face frames are matching finish maple and the drawer front is ¾" melamine laminate. Wood grain laminates will have natural wood grain laminate interiors and exteriors.

**THE SELECT SERIES — SMART CHECKS OPTIONS**

## Drawer Options:

### Standard Drawer
*Furniture Board Drawer*



- ¾" Wood grain laminated furniture board drawer
- Epoxy coated, self-closing, side mount drawer slides

### Wood Drawer With Full Extension Drawer Slides Upgrade Option
*Solid Wood Drawer with Full Extension Drawer Slides featuring Soft Close (WDSC)*



- ⅝" Solid hardwood drawer box in natural finish
- Dovetail construction
- Full extension, undermount, soft close drawer slides
- Keeps items from shifting
- Smooth, quiet drawer
- Prevents rebounding
- Specify WDSC order code

### Plywood Drawer Upgrade



- ⅝" Plywood dovetail drawer in natural finish
- Smooth, undermount, full access, soft close drawer slides
- Smooth, quiet drawer
- Specify PWD to order

## Hinge Options:



### Standard Hinge
- 6-way adjustable concealed hinge



### Smooth Close Hinge Option
- 6-way adjustable concealed hinge
- Soft Close
- See page Select–1–43 for details and ordering codes

### Standard End Panels
### ½" Furniture Board End Panels:



**Finishes with Natural Ends**
- Shipped standard with natural maple wood grain laminate
- Does not match cabinet front
- All exposed cabinet ends require an end application

## Factory Installed Options:



### Matching Finished End
- Specify MFE for one or both ends
- See Select–1–44 for details and ordering codes



### Matching End Panel
- See page Select–1–66 for details and ordering codes



### Flush Cabinet End
- Specify FCE for one or both ends
- Yields a ¾" flush, finished plywood cabinet end
- See Select–1–44 for details and ordering codes



### Applied Door Option
- See page Select–1–50 for details and ordering codes

 *sink wall uppers only*

## ✶Field Installed Options: ✶ *penninsula base only*



**Applied Door**
- Skin the End Panel
- Add appropriate size door



**Matching End Panel**



**Finished Skin**



**Bead Board Panels**



# <u>AVERAGE TIMELINES FROM DEMO DAY</u>

## BATH PROJECT AVERAGE DURATION FROM START TO FINISH: 12-14 WEEKS

## KITCHEN PROJECT AVERAGE DURATION FROM START TO FINISH: 12-14 WEEKS

AVERAGE COUNTERTOP AND SHOWER DOOR TEMPLATE TO INSTALLATION:

6-8 WEEKS

***CAMBRIA*** 8-10 WEEKS

COUNTERTOP AND SHOWER DOOR TEMPLATES ARE TYPICALLY SCHEDULED 1-2 WEEKS OUT AND TYPICALLY CANNOT TAKE PLACE UNTIL CABINETS/TILE ARE INSTALLED.

## MATERIAL LEAD TIMES ARE SUBJECT TO CHANGE WITHOUT NOTICE WHICH MAY IMPACT THE OVERALL TIMELINE OF THE JOB.

### <u>I HAVE READ AND UNDERSTOOD THIS FORM.</u>

CUSTOMER SIGNATURE: _____ DATE: 2/21/22

# Your Map To Project Success

**Remodel projects typically take 12-14 weeks**
*due to extended material lead times

## Things to do / FYI's:

Login to Builder-Trend/ watch intro video
Dedicated Project Manager is your main point of contact
Change orders must be approved and paid for ASAP to avoid project delays
No material changes can be made once orders are placed
Minimum 6-8 week wait time from countertop / shower door template to install – some products have longer lead times; material lead times may lengthen anticipated job timeline

### Bathroom

Start Date Prep Home → Demo → Framing/ rough plumbing/ electrical → Drywall/ underlayment installation → Tile install /cabinet install /accessory install → Shower door/ countertop install → Final plumbing / electric → Punch list → Final walk through / survey

### Kitchen

Start Date Prep Home → Demo → Framing/ rough plumbing/ electrical → Drywall → Cabinet install/ accessory install → Countertops/ Backsplash install Flooring (if applicable) → Final plumbing / electric → Punch list → Final walk through / survey

Professional photographer (optional) → **Enjoy!**

**Customer Initials:** _ICR Walter_

This map is an outline and for reference only as it may not be exact.



all in one
KITCHEN & BATH

# Exhibit B

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ALLISON RABER and IAN RABER

       Plaintiff,

v.

ALL IN ONE CUSTOM RENOVATIONS, LLC
d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a
WARD STONE GROUP, LLC and JOHN WARD,

       Defendants.

_____/

Case No: 22        CK

Hon. 2022-195360-CK

JUDGE KWAME' L. ROWE

**Robert S. Silverman P-53626**
MIKE MORSE LAW FIRM
Attorneys for Plaintiff
24901 Northwestern Highway, Suite 700
Southfield, MI 48075-l816
(248) 350-9050

_____/

## COMPLAINT

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge. MCR 1.109(D)(2)(a)(i).

/s/ *Robert Silverman*

_____
Robert S. Silverman P-53626

NOW COMES Plaintiffs, Allison Raber and Ian Raber, by and through their attorneys, Mike Morse Law Firm, and for her Complaint against the above named Defendants, ALL IN ONE CUSTOM RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC and JOHN WARD, states as follows:

## GENERAL ALLEGATIONS

1.     Plaintiff ALLISON RABER is a resident of the City of Novi, County of Oakland, State of Michigan.

FILED   Received for Filing   Oakland County Clerk   8/1/2022 2:38 PM

2.     Plaintiff IAN RABER is a resident of the City of Novi, County of Oakland, State of Michigan.

3.     Defendant, ALL IN ONE CUSTOM RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC upon information and belief, is a Limited Liability Corporation that at all times relevant conducted business in the County of Oakland, State of Michigan.

4.     Defendant JOHN WARD, is a resident of the City of Fenton, State of Michigan, who at all times relevant conducted business in the County of Oakland, State of Michigan.

5.     The amount in controversy is in excess of $25,000.00, exclusive of interest and costs, and is otherwise within the jurisdiction of this Honorable Court.

6.     On February 21, 2022, Plaintiffs, Allison Raber and Ian Raber, [hereinafter "Plaintiffs"] entered into a written agreement for construction with Defendant All in One Custom Renovations, LLC d/b/a All in One Kitchen and Bath f/k/a Ward Stone Group, LLC.

7.     Under the terms of the contract Defendant All in One Custom Renovations, LLC d/b/a All in One Kitchen and Bath f/k/a Ward Stone Group, LLC [herein after "Defendant All in One"] was obligated to purchase materials and perform renovations at the residential home of Plaintiffs in the County of Oakland, State of Michigan. .

8.     Under the terms of the contract, Plaintiffs paid to Defendant All in One in excess of Twenty-Five Thousand Dollars on February 21, 2022.

9.     At no time did Defendant All in One purchase the materials to perform their obligations under the contract.

10.     At no time did Defendant All in One perform any of the construction to perform

2

their obligations under the contract.

11.    Defendant All in One has Affirmatively stated that it will not perform any of their obligations under the contract.

12.    Defendant All in One has not returned any funds to Plaintiffs.

13.    Defendant All in One is a mere instrumentality of Defendant John Ward [hereinafter "Defendant Ward"]

14.    Defendant All in One was used by Defendant Ward to commit a fraud or wrong.

15.    Defendant All in One and Defendant Ward caused an unjust loss or injury to Plaintiffs.

## COUNT I
## BREACH OF CONTRACT AS TO DEFENDANT, ALL IN ONE CUSTOM RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC

16.    Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

17.    The February 21, 2022 signed agreement constituted a binding contract between Plaintiffs and Defendant All in One.

18.    Plaintiffs have fulfilled all duties due under the contract.

19.    Defendant All in One have not performed any duties under the contract.

20.    Defendant All in One has breached the contract and has confirmed an intent to neither perform their obligations under the contract, nor cure their breach.

21.    The contract provides that in the event of a legal dispute, the prevailing parties will be entitled to all costs and reasonable attorney's fees.

3

22. Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant, ALL IN ONE CUSTOM RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC, for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

## COUNT II
### FRAUDULENT MISREPRESENTATION AS TO DEFENDANT, ALL IN ONE CUSTOM RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC

23. Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

24. Defendant All in One represented on multiple occasions to Plaintiffs that it would dutifully fulfill their obligations to them and would act in performance under the Contract.

25. Within weeks prior to confirming an intent to not perform under the contract, Defendant All in One made additional representations that performance was on track to be timely performed.

26. Defendant All in One intended for Plaintiffs to rely on its representation(s).

4

27.     Defendant All in One's representation(s) were false in that Defendant All in One failed to purchase materials, failed to begin any construction activities and retained all funds paid without performing any of its obligations.

28.     Defendant All in One's representation(s) were false in that Defendant All in One knew that they had no intention and/or ability to perform under the contract and/or recklessly disregarded their lack of ability to perform under the contract.

29.     Defendant All in One made their representation(s) with the intent of Plaintiffs relying on their representations.

30.     Plaintiffs did rely on Defendant All in One's representation(s).

31.     As a result of Defendant All in One's fraudulent misrepresentations, Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant, ALL IN ONE CUSTOM RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC, for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

## <u>COUNT III</u>
### VIOLATION OF MCLA 600.2919a AS TO DEFENDANT, ALL IN ONE CUSTOM RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC

32.     Plaintiffs hereby adopts and incorporates by reference each and every preceding

5

allegation of this Complaint as if more fully set forth herein.

33.     Defendant All in One took possession of in excess of Twenty-Five Thousand Dollars from Plaintiffs.

34.     Defendant All in One took possession of in excess of Twenty-Five Thousand Dollars from Plaintiffs without intending to perform under the contract.

35.     Defendant All in One has never returned any of the money obtained from Plaintiffs.

36.     Defendant All in One converted Plaintiffs' funds to its own use and/or embezzled the funds or otherwise stole the funds in violation of MCL 600.2912a.

37.     As a result of Defendant All in One's violation of MCL 600.2912a, Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

38.     Pursuant to violation of MCL 600.2912a, Plaintiffs are entitled to three (3) times the amount of actual damages sustained, plus interest and reasonable attorney fees.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant, ALL IN ONE CUSTON RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC, for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with treble damages, interest, costs and reasonable attorney fees so wrongfully sustained.

## COUNT IV
### VIOLATION OF MCLA 600.2920 AS TO DEFENDANT, ALL IN ONE CUSTOM RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC

6

39.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

40.     Defendant All in One, upon information and belief, may have used some of the funds paid by Plaintiffs to purchase some goods to be installed under the construction contract.

41.     Any goods purchased by Defendant All in One to be installed under the construction contract are goods owned by Plaintiffs.

42.     Defendant All in One has not tendered possession of any goods purchased to be installed under the construction contract.

43.     Defendant All in One's failure to tendered possession of any goods purchased to be installed under the construction contract is an unlawful taking and/or unlawful detention of Plaintiffs' goods in violation of MCL 600.2920.

44.     Plaintiffs have suffered damages as a result of Defendant All in One's unlawful taking and/or unlawful detention of Plaintiffs' goods.

45.     Pursuant to MCL 600.2920, Plaintiffs are entitled to recovery of the goods and damages sustained from the unlawful taking of goods.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant, ALL IN ONE CUSTOM RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC, for recovery of goods and whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

7

## COUNT V
### VIOLATION OF MCL 570.151, et esq, BUILDING CONTRACT ACT, AS TO DEFENDANT, ALL IN ONE CUSTOM RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC

46.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

47.     Defendant All in One is engaged in the building construction business.

48.     Defendant All in One used funds paid by Plaintiffs for a purpose other than to first pay laborers, subcontractors and materialmen, engaged by it to perform labor or furnish material for the specific improvement under the contract with Plaintiffs.

49.     Defendant All in One's use of funds paid by Plaintiffs for a purpose other than to perform labor or furnish material for the specific improvement under the contract with Plaintiffs, was done so with the intent to defraud Plaintiffs.

50.     Defendant All in One's use of funds paid by Plaintiffs is violative of MCL 570.152, a felony, punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment.

51.     Defendant All in One's violation of MCL 570.152 gives rise to civil remedy for damages sustained.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant, ALL IN ONE CUSTOM RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC, for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly,

8

adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

**<u>COUNT VI</u>**
**BREACH OF CONTRACT AS TO DEFENDANT JOHN WARD**

52.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

53.     The February 21, 2022 signed agreement constituted a binding contract between Plaintiffs and Defendant John Ward, as a mere instrumentality of Defendant All in One.

54.     Plaintiffs have fulfilled all duties due under the contract.

55.     Defendant Ward has not performed any duties under the contract.

56.     Defendant Ward has breached the contract and has confirmed an intent to neither perform their obligations under the contract, nor cure his breach.

57.     The contract providers that in the event of a legal dispute, the prevailing parties will be entitled to all costs and reasonable attorney's fees.

58.     Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant JOHN WARD for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

9

## COUNT VII
## FRAUDULENT MISREPRESENTATION AS TO DEFENDANT JOHN WARD

59.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

60.     Defendant Ward and Defendant All in One, as a mere instrumentality of Defendant Ward, represented on multiple occasions to Plaintiffs that he would dutifully fulfill his obligations to them and would act in performance under the Contract.

61.     Within weeks prior to confirming an intent to not perform under the contract, Defendant Ward made additional representations that performance was on track to be timely performed.

62.     Defendant Ward intended for Plaintiffs to rely on his representation(s).

63.     Defendant Ward's representation(s) were false in that he failed to purchase any materials, failed to begin any construction activities and retained all funds paid without performing any of his obligations.

64.     Defendant Ward's representation(s) were false in that he knew that they he had no intention and/or ability to perform under the contract and/or recklessly disregarded his lack of ability to perform under the contract.

65.     Defendant Ward made his representation(s) with the intent of Plaintiffs relying on their representations.

66.     Plaintiffs did rely on Defendant Ward's representation(s).

10

67.     As a result of Defendant Ward's fraudulent misrepresentations, Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant JOHN WARD for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

## COUNT VIII
## VIOLATION OF MCLA 600.2919a AS TO DEFENDANT JOHN WARD

68.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

69.     Defendant All in One, as a mere instrumentality of Defendant Ward, took possession of in excess of Twenty-Five Thousand Dollars from Plaintiffs.

70.     Defendant Ward took possession of in excess of Twenty-Five Thousand Dollars from Plaintiffs without intending to perform under the contract.

71.     Defendant Ward has never returned any of the money obtained from Plaintiffs.

72.     Defendant Ward converted Plaintiffs' funds to its own use and/or embezzled the funds or otherwise stole the funds in violation of MCL 600.2912a.

73.     As a result of Defendant Ward's violation of MCL 600.2912a, Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

11

74.     Pursuant to violation of MCL 600.2912a, Plaintiffs are entitled to three (3) timed the amount of actual damages sustained, plus interest and reasonable attorney fees.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant JOHN WARD for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with treble damages, interest, costs and reasonable attorney fees so wrongfully sustained.

## COUNT IX
## VIOLATION OF MCLA 600.2920 AS TO DEFENDANT JOHN WARD

75.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

76.     Defendant All in One, as a mere instrumentality of Defendant Ward, upon information and belief, may have used some of the funds paid by Plaintiffs to purchase goods to be installed under the construction contract.

77.     Any goods purchased by Defendant Ward to be installed under the construction contract are goods owned by Plaintiffs.

78.     Defendant Ward has not tendered possession of any goods purchased to be installed under the construction contract.

79.     Defendant Ward's failure to tendered possession of any goods purchased to be installed under the construction contract is an unlawful taking and/or unlawful detention of Plaintiffs' goods in violation of MCL 600.2920.

12

80.     Plaintiffs have suffered damages as a result of Defendant Ward's unlawful taking and/or unlawful detention of Plaintiffs' goods.

81.     Pursuant to MCL 600.2920, Plaintiffs are entitled to recovery of the goods and damages sustained from the unlawful taking of goods.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant JONH WARD for recovery of goods and whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

## COUNT X
## VIOLATION OF MCL 570.151, et esq, BUILDING CONTRACT ACT, AS TO DEFENDANT JOHN WARD

82.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

83.     Defendant Ward is engaged in the building construction business.

84.     Defendant Ward used funds paid by Plaintiffs for a purpose other than to first pay laborers, subcontractors and materialmen, engaged by it to perform labor or furnish material for the specific improvement under the contract with Plaintiffs.

85.     Defendant Ward's use of funds paid by Plaintiffs for a purpose other than to perform labor or furnish material for the specific improvement under the contract with Plaintiffs, was done so with the intent to defraud Plaintiffs.

13

86.     Defendant Ward's use of funds paid by Plaintiffs is violative of MCL 570.152, a felony, punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment.

87.     Defendant Ward's violation of MCL 570.152 gives rise to civil remedy for damages sustained.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant JOHN WARD for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

Respectfully submitted,
MIKE MORSE LAW FIRM,
Attorneys for Plaintiff

/s/ *Robert Silverman*

_____

Robert S. Silverman P-53626
24901 Northwestern Highway, Suite 700
Southfield, MI 48075
(248) 350-9050

Dated:  August 1, 2022

14

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ALLISON RABER and IAN RABER

          Plaintiff,

v.

ALL IN ONE CUSTON RENOVATIONS, LLC
d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a
WARD STONE GROUP, LLC and JOHN WARD,

          Defendants.

Case No: 22      CK
2022-195360-CK
Hon.

JUDGE KWAME' L. ROWE

_____/

**Robert S. Silverman P-53626**
MIKE MORSE LAW FIRM
Attorneys for Plaintiff
24901 Northwestern Highway, Suite 700
Southfield, MI 48075-l816
(248) 350-9050
_____/

## <u>JURY DEMAND</u>

     Plaintiffs, by and through their attorneys, Mike Morse Law Firm, hereby respectfully demand

a trial by jury on all issues in this cause of action.

                 Respectfully submitted,

                 MIKE MORSE LAW FIRM,
                 Attorneys for Plaintiff

                 */s/ Robert Silverman*

                _____
                Robert S. Silverman P-53626
                24901 Northwestern Highway, Suite 700
                Southfield, MI 48075
                (248) 350-9050

Dated:  August 1, 2022

# Exhibit C

FILED    Received for Filing    Oakland County Clerk    9/6/2022 1:04 PM

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ALLISON RABER and IAN RABER                         Case No: 22-195360-CK
Plaintiff,                                          Hon. Kwame Rowe

v.

ALL IN ONE CUSTON RENOVATIONS, LLC
d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a
WARD STONE GROUP, LLC, JOHN WARD and
SAUNDRA WARD,

Defendants.

                                         /

| **Robert S. Silverman P-53626** | **Tyler Phillips P-78280** |
|---|---|
| MIKE MORSE LAW FIRM | Attorney for Defendants All in One and John |
| Attorneys for Plaintiff | Ward |
| 24901 Northwestern Highway, Suite 700 | *Kotz Sangster Wysocki, PC* |
| Southfield, MI 48075-l816 | 400 Renaissance Center Ste 3400 |
| (248) 350-9050 | Detroit, MI  48243 |
|  | (313) 259-8300 |
|  | tphillips@kotzsangster.com |
|  | lpfund@kotzsangster.com |

### **FIRST AMENDED COMPLAINT**

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge. MCR 1.109(D)(2)(a)(i).

/s/ *Robert Silverman*

_____
Robert S. Silverman P-53626

NOW COMES Plaintiffs, Allison Raber and Ian Raber, by and through their attorneys, The

Mike Morse Law Firm, and for their First Amended Complaint against the above named

Defendants, ALL IN ONE CUSTON RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND

BATH, f/k/a WARD STONE GROUP, LLC, JOHN WARD and SAUNDRA WARD, filed as a

matter of course pursuant to MCR 2.118(A)(1) within fourteen days after being served with a

responsive pleading by the adverse party, states as follows:

**GENERAL ALLEGATIONS**

1. Plaintiff ALLISON RABER is a resident of the City of Novi, County of Oakland, State of Michigan.

2. Plaintiff IAN RABER is a resident of the City of Novi, County of Oakland, State of Michigan.

3. Defendant, ALL IN ONE CUSTON RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC upon information and belief, is a Limited Liability Corporation that at all times relevant conducted business in the County of Oakland, State of Michigan.

4. Defendant JOHN WARD, is a resident of the City of Fenton, State of Michigan, who at all times relevant conducted business in the County of Oakland, State of Michigan.

5. Defendant SAUNDRA WARD, is a resident of the City of Fenton, State of Michigan, who at all times relevant conducted business in the County of Oakland, State of Michigan.

6. The amount in controversy is in excess of $25,000.00, exclusive of interest and costs, and is otherwise within the jurisdiction of this Honorable Court.

7. On February 21, 2022, Plaintiffs, Allison Raber and Ian Raber, [hereinafter "Plaintiffs"] entered into a written agreement for construction with Defendant All in One Custom Renovations, LLC d/b/a All in One Kitchen and Bath f/k/a Ward Stone Group, LLC.

8. Under the terms of the contract Defendant All in One Custom Renovations, LLC d/b/a All in One Kitchen and Bath f/k/a Ward Stone Group, LLC [herein after "Defendant All in

2

One"] was obligated to purchase materials and perform renovations at the residential home of Plaintiffs in the County of Oakland, State of Michigan.

9. Under the terms of the contract, Plaintiffs paid to Defendant All in One in excess of Twenty-Five Thousand Dollars on February 21, 2022.

10. At no time did Defendant All in One purchase the materials to perform their obligations under the contract.

11. At no time did Defendant All in One perform any of the construction to perform their obligations under the contract.

12. Defendant All in One has Affirmatively stated that it will not perform any of their obligations under the contract.

13. Defendant All in One has not returned any funds to Plaintiffs.

14. Defendant All in One is a mere instrumentality of Defendant John Ward [hereinafter "Defendant Ward"]

15. Defendant All in One was used by Defendant Ward to commit a fraud or wrong.

16. Defendant All in One and Defendant Ward caused an unjust loss or injury to Plaintiffs.

17. Defendant All in One is a mere instrumentality of Defendant Saundra Ward [hereinafter "Defendant S. Ward"]

18. Defendant All in One was used by Defendant S. Ward to commit a fraud or wrong.

19. Defendant All in One and Defendant S. Ward caused an unjust loss or injury to Plaintiffs.

20. A copy of the February 21, 2022 contract is in the possession of all Defendants.

3

## COUNT I
## BREACH OF CONTRACT AS TO DEFENDANT, ALL IN ONE CUSTON RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC

21.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

22.     The February 21, 2022 signed agreement constituted a binding contract between Plaintiffs and Defendant All in One.

23.     Plaintiffs have fulfilled all duties due under the contract.

24.     Defendant All in One have not performed any duties under the contract.

25.     Defendant All in One has breached the contract and has confirmed an intent to neither perform their obligations under the contract, nor cure their breach.

26.     The contract provides that in the event of a legal dispute, the prevailing parties will be entitled to all costs and reasonable attorney's fees.

27.     Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant, ALL IN ONE CUSTON RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC, for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

4

**FRAUDULENT MISREPRESENTATION AS TO DEFENDANT, ALL IN ONE CUSTON RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC**

28.    Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

29.    Defendant All in One represented on multiple occasions to Plaintiffs that it would dutifully fulfill their obligations to them and would act in performance under the Contract.

30.    Within weeks prior to confirming an intent to not perform under the contract, Defendant All in One made additional representations that performance was on track to be timely performed.

31.    Defendant All in One intended for Plaintiffs to rely on its representation(s).

32.    Defendant All in One's representation(s) were false in that Defendant All in One failed to purchase materials, failed to begin any construction activities and retained all funds paid without performing any of its obligations.

33.    Defendant All in One's representation(s) were false in that Defendant All in One knew that they had no intention and/or ability to perform under the contract and/or recklessly disregarded their lack of ability to perform under the contract.

34.    Defendant All in One made their representation(s) with the intent of Plaintiffs relying on their representations.

35.    Plaintiffs did rely on Defendant All in One's representation(s).

36.    As a result of Defendant All in One's fraudulent misrepresentations, Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional

5

costs to be incurred to obtain alternate performance, costs and attorney fees.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant, ALL IN ONE CUSTON RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC, for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

### COUNT III
### VIOLATION OF MCLA 600.2919a AS TO DEFENDANT, ALL IN ONE CUSTON RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC

37.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

38.     Defendant All in One took possession of in excess of Twenty-Five Thousand Dollars from Plaintiffs.

39.     Defendant All in One took possession of in excess of Twenty-Five Thousand Dollars from Plaintiffs without intending to perform under the contract.

40.     Defendant All in One has never returned any of the money obtained from Plaintiffs.

41.     Defendant All in One converted Plaintiffs' funds to its own use and/or embezzled the funds or otherwise stole the funds in violation of MCL 600.2912a.

42.     As a result of Defendant All in One's violation of MCL 600.2912a, Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

6

43.     Pursuant to violation of MCL 600.2912a, Plaintiffs are entitled to three (3) times the amount of actual damages sustained, plus interest and reasonable attorney fees.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant, ALL IN ONE CUSTON RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC, for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with treble damages, interest, costs and reasonable attorney fees so wrongfully sustained.

## COUNT IV
## VIOLATION OF MCLA 600.2920 AS TO DEFENDANT, ALL IN ONE CUSTON RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC

44.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

45.     Defendant All in One, upon information and belief, may have used some of the funds paid by Plaintiffs to purchase some goods to be installed under the construction contract.

46.     Any goods purchased by Defendant All in One to be installed under the construction contract are goods owned by Plaintiffs.

47.     Defendant All in One has not tendered possession of all goods purchased to be installed under the construction contract.

48.     Defendant All in One's failure to tendered possession of all goods purchased to be installed under the construction contract is an unlawful taking and/or unlawful detention of Plaintiffs' goods in violation of MCL 600.2920.

7

49.     Plaintiffs have suffered damages as a result of Defendant All in One's unlawful taking and/or unlawful detention of Plaintiffs' goods.

50.     Pursuant to MCL 600.2920, Plaintiffs are entitled to recovery of the goods and damages sustained from the unlawful taking of goods.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant, ALL IN ONE CUSTON RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC, for recovery of goods and whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

### COUNT V
### VIOLATION OF MCL 570.151, et esq, BUILDING CONTRACT ACT, AS TO DEFENDANT, ALL IN ONE CUSTON RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC

51.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

52.     Defendant All in One is engaged in the building construction business.

53.     Defendant All in One used funds paid by Plaintiffs for a purpose other than to first pay laborers, subcontractors and materialmen, engaged by it to perform labor or furnish material for the specific improvement under the contract with Plaintiffs.

54.     Defendant All in One's use of funds paid by Plaintiffs for a purpose other than to perform labor or furnish material for the specific improvement under the contract with Plaintiffs, was done so with the intent to defraud Plaintiffs.

55.     Defendant All in One's use of funds paid by Plaintiffs is violative of MCL 570.152,

8

a felony, punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment.

56.     Defendant All in One's violation of MCL 570.152 gives rise to civil remedy for damages sustained.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant, ALL IN ONE CUSTON RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC, for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

<u>**COUNT VI**</u>
**BREACH OF CONTRACT AS TO DEFENDANT JOHN WARD**

57.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

58.     The February 21, 2022 signed agreement constituted a binding contract between Plaintiffs and Defendant John Ward, with Defendant All in One as a mere instrumentality of Defendant Ward.

59.     Plaintiffs have fulfilled all duties due under the contract.

60.     Defendant Ward has not performed any duties under the contract.

61.     Defendant Ward has breached the contract and has confirmed an intent to neither perform their obligations under the contract, nor cure his breach.

62.     The contract providers that in the event of a legal dispute, the prevailing parties will be entitled to all costs and reasonable attorney's fees.

9

63. Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant JOHN WARD for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

**COUNT VII**
**FRAUDULENT MISREPRESENTATION AS TO DEFENDANT JOHN WARD**

64. Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

65. Defendant Ward and Defendant All in One, as a mere instrumentality of Defendant Ward, represented on multiple occasions to Plaintiffs that he would dutifully fulfill his obligations to them and would act in performance under the Contract.

66. Within weeks prior to confirming an intent to not perform under the contract, Defendant Ward made additional representations that performance was on track to be timely performed.

67. Defendant Ward intended for Plaintiffs to rely on his representation(s).

68. Defendant Ward's representation(s) were false in that he failed to purchase any materials, failed to begin any construction activities and retained all funds paid without performing any of his obligations.

69. Defendant Ward's representation(s) were false in that he knew that they he had no

10

intention and/or ability to perform under the contract and/or recklessly disregarded his lack of ability to perform under the contract.

70.     Defendant Ward made his representation(s) with the intent of Plaintiffs relying on their representations.

71.     Plaintiffs did rely on Defendant Ward's representation(s).

72.     As a result of Defendant Ward's fraudulent misrepresentations, Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant JOHN WARD for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

## <u>COUNT VIII</u>
## <u>VIOLATION OF MCLA 600.2919a AS TO DEFENDANT JOHN WARD</u>

73.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

74.     Defendant All in One, as a mere instrumentality of Defendant Ward, took possession of in excess of Twenty-Five Thousand Dollars from Plaintiffs.

75.     Defendant Ward took possession of in excess of Twenty-Five Thousand Dollars from Plaintiffs without intending to perform under the contract.

76.     Defendant Ward has never returned any of the money obtained from Plaintiffs.

77.     Defendant Ward converted Plaintiffs' funds to its own use and/or embezzled the

11

funds or otherwise stole the funds in violation of MCL 600.2912a.

78.     As a result of Defendant Ward's violation of MCL 600.2912a, Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

79.     Pursuant to violation of MCL 600.2912a, Plaintiffs are entitled to three (3) times the amount of actual damages sustained, plus interest and reasonable attorney fees.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant JOHN WARD for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with treble damages, interest, costs and reasonable attorney fees so wrongfully sustained.

**COUNT IX**
**VIOLATION OF MCLA 600.2920 AS TO DEFENDANT JOHN WARD**

80.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

81.     Defendant All in One, as a mere instrumentality of Defendant Ward, upon information and belief, may have used some of the funds paid by Plaintiffs to purchase goods to be installed under the construction contract.

82.     Any goods purchased by Defendant Ward to be installed under the construction contract are goods owned by Plaintiffs.

83.     Defendant Ward has not tendered possession of all goods purchased to be installed under the construction contract.

84.     Defendant Ward's failure to tendered possession of any goods purchased to be

12

installed under the construction contract is an unlawful taking and/or unlawful detention of Plaintiffs' goods in violation of MCL 600.2920.

85. Plaintiffs have suffered damages as a result of Defendant Ward's unlawful taking and/or unlawful detention of Plaintiffs' goods.

86. Pursuant to MCL 600.2920, Plaintiffs are entitled to recovery of the goods and damages sustained from the unlawful taking of goods.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant JOHN WARD for recovery of goods and whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

## COUNT X
### VIOLATION OF MCL 570.151, et esq, BUILDING CONTRACT ACT, AS TO DEFENDANT JOHN WARD

87. Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

88. Defendant Ward is engaged in the building construction business.

89. Defendant Ward used funds paid by Plaintiffs for a purpose other than to first pay laborers, subcontractors and materialmen, engaged by it to perform labor or furnish material for the specific improvement under the contract with Plaintiffs.

90. Defendant Ward's use of funds paid by Plaintiffs for a purpose other than to perform labor or furnish material for the specific improvement under the contract with Plaintiffs, was done so with the intent to defraud Plaintiffs.

13

91.     Defendant Ward's use of funds paid by Plaintiffs is violative of MCL 570.152, a felony, punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment.

92.     Defendant Ward's violation of MCL 570.152 gives rise to civil remedy for damages sustained.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant JOHN WARD for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

## COUNT XI
### INTENTIONAL / RECKLESS INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT ALL IN ONE CUSTON RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC

93.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

94.     Defendant All in One continuously affirmed to Plaintiffs that they were ready, willing, and able to perform on the contract.

95.     Defendant All in One continuously affirmed to Plaintiffs that performance was on track, including ordering materials with sufficient lead times for delivery to perform construction on the schedule(s) provided

96.      Defendant All in One, while making continuous affirmations to Plaintiffs, had actually embezzled Plaintiffs' funds and violated statutory Trust responsibilities.

14

97.     When Defendant All in One confirmed in writing that they would not perform under the contract in a letter dated two weeks after they had confirmed that performance was on track, Defendant All in One closed its business establishment, shut down its website, closed the its Facebook and LinkedIn accounts, stopped answering its phones, and provided no means to contact them.

98.     Defendant All in One's actions were extreme and outrageous.

99.     Defendant All in One's actions were performed with intent or recklessness.

100.    Defendant All in One's actions caused reasonably foreseeable severe emotional distress to Plaintiffs, including but not limited to severe and excruciating pain and suffering, humiliation and embarrassment and loss of natural enjoyments of life which will continue to be experienced for an indefinite time into the future.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant, ALL IN ONE CUSTON RENOVATIONS, LLC d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a WARD STONE GROUP, LLC, for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

## COUNT XII
### INTENTIONAL / RECKLESS INFLICTION OF EMOTIONAL DISTRESS
### AS TO DEFENDANT JOHN WARD

101.    Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

102.    Defendant Ward and Defendant All in One, as a mere instrumentality of Defendant

15

Ward, continuously affirmed to Plaintiffs that they were ready, willing, and able to perform on the contract.

103.    Defendant Ward and Defendant All in One, as a mere instrumentality of Defendant Ward, continuously affirmed to Plaintiffs that performance was on track, including ordering materials with sufficient lead times for delivery to perform construction on the schedule(s) provided

104.    Defendant Ward and Defendant All in One, as a mere instrumentality of Defendant Ward, while making continuous affirmations to Plaintiffs, had actually embezzled Plaintiffs' funds and violated statutory Trust responsibilities.

105.    When Defendant Ward and Defendant All in One, as a mere instrumentality of Defendant Ward, confirmed in writing that they would not perform under the contract in a letter dated two weeks after they had confirmed that performance was on track, closed his business establishment, shut down his business website, closed his business and personal Facebook and LinkedIn accounts, stopped answering his phones, and provided no means to contact him, while he, upon information and belief, also moved his personal residence to a new County.

106.    Defendant Ward's actions were extreme and outrageous.

107.    Defendant Ward's actions were performed with intent or recklessness.

108.    Defendant Ward's actions caused reasonably foreseeable severe emotional distress to Plaintiffs, including but not limited to severe and excruciating pain and suffering, humiliation and embarrassment and loss of natural enjoyments of life which will continue to be experienced for an indefinite time into the future.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment

16

be entered in their favor against Defendant, JOHN WARD, for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

<u>COUNT XIII</u>
**BREACH OF CONTRACT AS TO DEFENDANT SAUNDRA WARD**

109.    Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

110.    The February 21, 2022 signed agreement constituted a binding contract between Plaintiffs and Defendant Saundra Ward, with Defendant All in One as a mere instrumentality of Defendant S. Ward.

111.    Plaintiffs have fulfilled all duties due under the contract.

112.    Defendant S. Ward has not performed any duties under the contract.

113.    Defendant S. Ward has breached the contract and has confirmed an intent to neither perform their obligations under the contract, nor cure his breach.

114.    The contract providers that in the event of a legal dispute, the prevailing parties will be entitled to all costs and reasonable attorney's fees.

115.    Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant SAUNDRA WARD for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately

17

and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

**COUNT XIV**
**FRAUDULENT MISREPRESENTATION AS TO DEFENDANT SAUNDRA WARD**

116.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

117.     Defendant S. Ward and Defendant All in One, as a mere instrumentality of Defendant S. Ward, represented on multiple occasions to Plaintiffs that she would dutifully fulfill her obligations to them and would act in performance under the Contract.

118.     Within weeks prior to confirming an intent to not perform under the contract, Defendant S. Ward made additional representations that performance was on track to be timely performed.

119.     Defendant S. Ward intended for Plaintiffs to rely on her representation(s).

120.     Defendant S. Ward's representation(s) were false in that she failed to purchase any materials, failed to begin any construction activities and retained all funds paid without performing any of her obligations.

121.     Defendant S. Ward's representation(s) were false in that she knew that they she had no intention and/or ability to perform under the contract and/or recklessly disregarded her lack of ability to perform under the contract.

122.     Defendant S. Ward made her representation(s) with the intent of Plaintiffs relying on their representations.

123.     Plaintiffs did rely on Defendant S. Ward's representation(s).

124.     As a result of Defendant S. Ward's fraudulent misrepresentations, Plaintiffs have

18

suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant SAUNDRA WARD for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

### COUNT XV
### VIOLATION OF MCLA 600.2919a AS TO DEFENDANT SAUNDRA WARD

125.    Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

126.    Defendant All in One, as a mere instrumentality of Defendant S. Ward, took possession of in excess of Twenty-Five Thousand Dollars from Plaintiffs.

127.    Defendant S. Ward took possession of in excess of Twenty-Five Thousand Dollars from Plaintiffs without intending to perform under the contract.

128.    Defendant S. Ward has never returned any of the money obtained from Plaintiffs.

129.    Defendant S. Ward converted Plaintiffs' funds to her own use and/or embezzled the funds or otherwise stole the funds in violation of MCL 600.2912a.

130.    As a result of Defendant S. Ward's violation of MCL 600.2912a, Plaintiffs have suffered damages including but not limited to, damages for funds wrongfully withheld, additional costs to be incurred to obtain alternate performance, costs and attorney fees.

131.    Pursuant to violation of MCL 600.2912a, Plaintiffs are entitled to three (3) times the amount of actual damages sustained, plus interest and reasonable attorney fees.

19

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant SAUNDRA WARD for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with treble damages, interest, costs and reasonable attorney fees so wrongfully sustained.

**COUNT XVI**
**VIOLATION OF MCLA 600.2920 AS TO DEFENDANT SAUNDRA WARD**

132.    Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

133.    Defendant All in One, as a mere instrumentality of Defendant S. Ward, upon information and belief, may have used some of the funds paid by Plaintiffs to purchase goods to be installed under the construction contract.

134.    Any goods purchased by Defendant S. Ward to be installed under the construction contract are goods owned by Plaintiffs.

135.    Defendant S. Ward has not tendered possession of all goods purchased to be installed under the construction contract.

136.    Defendant S. Ward's failure to tendered possession of all goods purchased to be installed under the construction contract is an unlawful taking and/or unlawful detention of Plaintiffs' goods in violation of MCL 600.2920.

137.    Plaintiffs have suffered damages as a result of Defendant Ward's unlawful taking and/or unlawful detention of Plaintiffs' goods.

138.    Pursuant to MCL 600.2920, Plaintiffs are entitled to recovery of the goods and damages sustained from the unlawful taking of goods.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant SAUNDRAWARD for recovery of goods and whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

### COUNT XVII
### VIOLATION OF MCL 570.151, et esq, BUILDING CONTRACT ACT, AS TO DEFENDANT SAUNDRA WARD

139.    Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

140.    Defendant S. Ward is engaged in the building construction business.

141.    Defendant S. Ward used funds paid by Plaintiffs for a purpose other than to first pay laborers, subcontractors and materialmen, engaged by it to perform labor or furnish material for the specific improvement under the contract with Plaintiffs.

142.    Defendant S. Ward's use of funds paid by Plaintiffs for a purpose other than to perform labor or furnish material for the specific improvement under the contract with Plaintiffs, was done so with the intent to defraud Plaintiffs.

143.    Defendant S. Ward's use of funds paid by Plaintiffs is violative of MCL 570.152, a felony, punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment.

144.    Defendant S. Ward's violation of MCL 570.152 gives rise to civil remedy for damages sustained.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment

be entered in their favor against Defendant SAUNDRA WARD for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

**COUNT XVIII**
**INTENTIONAL / RECKLESS INFLICTION OF EMOTIONAL DISTRESS**
**AS TO DEFENDANT SAUNDRAWARD**

145.     Plaintiffs hereby adopts and incorporates by reference each and every preceding allegation of this Complaint as if more fully set forth herein.

146.     Defendant S. Ward and Defendant All in One, as a mere instrumentality of Defendant S. Ward, continuously affirmed to Plaintiffs that they were ready, willing, and able to perform on the contract.

147.     Defendant S. Ward and Defendant All in One, as a mere instrumentality of Defendant S. Ward, continuously affirmed to Plaintiffs that performance was on track, including ordering materials with sufficient lead times for delivery to perform construction on the schedule(s) provided

148.     Defendant S. Ward and Defendant All in One, as a mere instrumentality of Defendant S. Ward, while making continuous affirmations to Plaintiffs, had actually embezzled Plaintiffs' funds and violated statutory Trust responsibilities.

149.     When Defendant S. Ward and Defendant All in One, as a mere instrumentality of Defendant S. Ward, confirmed in writing that they would not perform under the contract in a letter dated two weeks after they had confirmed that performance was on track, closed her business establishment, shut down her business website, closed her business and personal Facebook and

22

LinkedIn accounts, stopped answering her phones, and provided no means to contact her, while she, upon information and belief, also moved her personal residence to a new County.

150.    Defendant S. Ward's actions were extreme and outrageous.

151.    Defendant S. Ward's actions were performed with intent or recklessness.

152.    Defendant S. Ward's actions caused reasonably foreseeable severe emotional distress to Plaintiffs, including but not limited to severe and excruciating pain and suffering, humiliation and embarrassment and loss of natural enjoyments of life which will continue to be experienced for an indefinite time into the future.

WHEREFORE, Plaintiffs, Allison Raber and Ian Raber, respectfully request that judgment be entered in their favor against Defendant, SAUNDRA WARD, for whatever amount in excess of $25,000.00 they are found to be entitled, as determined by the trier of fact, to fairly, adequately and fully compensate Plaintiff, together with interest, costs and reasonable attorney fees so wrongfully sustained.

Respectfully submitted,
MIKE MORSE LAW FIRM,
Attorneys for Plaintiffs

/s/ *Robert Silverman*

_____
Robert S. Silverman P-53626
24901 Northwestern Highway, Suite 700
Southfield, MI 48075
(248) 350-9050

Dated:  September 6, 2022

23

FILED    Received for Filing    Oakland County Clerk    9/6/2022 1:04 PM

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ALLISON RABER and IAN RABER            Case No: 22-195360-CK
Plaintiff,            Hon. Kwame Rowe

v.

ALL IN ONE CUSTON RENOVATIONS, LLC
d/b/a ALL IN ONE KITCHEN AND BATH, f/k/a
WARD STONE GROUP, LLC, JOHN WARD and
SAUNDRA WARD,

Defendants.

_____/

| Robert S. Silverman P-53626 | Tyler Phillips P-78280 |
|---|---|
| MIKE MORSE LAW FIRM | Attorney for Defendants All in One and John |
| Attorneys for Plaintiff | Ward |
| 24901 Northwestern Highway, Suite 700 | *Kotz Sangster Wysocki, PC* |
| Southfield, MI 48075-l816 | 400 Renaissance Center Ste 3400 |
| (248) 350-9050 | Detroit, MI  48243 |
|  | (313) 259-8300 |
|  | tphillips@kotzsangster.com |
|  | lpfund@kotzsangster.com |

## **RELIANCE UPON JURY DEMAND**

Plaintiffs, by and through their attorneys, Mike Morse Law Firm, hereby relies upon their previously

filed jury demand in this cause of action.

Respectfully submitted,

MIKE MORSE LAW FIRM,
Attorneys for Plaintiff

/s/ *Robert Silverman*
_____
Robert S. Silverman P-53626
24901 Northwestern Highway, Suite 700
Southfield, MI 48075
(248) 350-9050

Dated:  September 6, 2022